[Civ. No. 23926. Third Dist. Aug. 22, 1985.]

BRITT PYNE et al., Plaintiffs and Appellants, v.
GEORGE MEESE, as Director, etc., et al., Defendants and Respondents.

394

COUNSEL

James J. Johnson for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, Seward L. Andrews and James M. Schiavenza, Deputy Attorneys General, Price, Price, Davis, Brown & Halsey, Dennis Halsey, Weintraub, Genshlea, Hardy, Erich & Brown and Larry L. Hill for Defendants and Respondents.

OPINION

**EVANS, Acting P. J.**—Plaintiffs brought an action under 42 United States Code section 1983 against defendants, various local and state agencies and their representatives. The trial court granted defendants' separate motions for summary judgment. Plaintiffs contend the trial court erred in granting the motions and in awarding attorney fees and costs. We will affirm the judgments.

FACTS[1]

In July 1982, plaintiffs received notice from the Department of Motor Vehicles (DMV) that registration fees in the amounts of $100 and $45 were due on their horse trailer and Volkswagen, respectively. Plaintiff Harold Pollard indicated to the DMV he intended to pay the fees, but requested a hearing pursuant to title 13, California Administrative Code, section 310.04, as he questioned the legality of federal reserve notes and did not wish to use them to pay the fees. Plaintiffs maintain unconventional beliefs regarding certain issues and believe the use of federal reserve notes violates the United States Constitution.

A hearing was held in August 1982. Plaintiffs' sole purpose in attending the hearing was to discuss the constitutional validity of using federal reserve notes to pay the registration fees. They did not inform the hearing officer the vehicles were not being operated upon public highways.[2] Following the hearing, plaintiffs were notified the fees were due and owing.

---

[1]All factual conflicts contained in the motions for summary judgment and the moving papers are resolved in favor of plaintiffs. (*Albertini* v. *Schaefer* (1979) 97 Cal.App.3d 822, 831 [159 Cal.Rptr. 98]; *Chesney* v. *Gresham* (1976) 64 Cal.App.3d 120, 125 [134 Cal.Rptr. 238].)

[2]Vehicle Code section 4000 requires vehicles using the public highways to be registered.

Some time before the hearing, plaintiffs had attempted to pay the registration fees on a jeep they owned with public office money certificates (hereafter POMCs).[3] They were informed POMCs were not acceptable as a form of payment.

On the day of the hearing concerning the fees on the trailer and the Volkswagen, plaintiffs met with DMV agents John Hurd and Joann Black at Archie's Pizza Parlor in Etna. Defendant David Bradford, Chief of the Etna Police Department, was also present. Hurd informed plaintiff Pollard the fees were due on the jeep and if he did not pay in acceptable currency, the vehicle would be impounded. Bradford informed Pollard he (Bradford) was there to keep the peace. Plaintiff Pollard told Hurd the vehicle was not going to be impounded and that furthermore, a seizure warrant as defined by the United States Constitution was necessary. During this confrontation, Pollard gestured to a sign regarding Proposition 15 (gun control) which was in issue at the time and stated, " 'When you come to take our guns, it won't be this easy.' " He explained he had no reason to believe Hurd would attempt to take his guns, but was generally fearful of police action.

Defendant Black, a DMV investigative agent, contacted Pollard in November 1982, and asked if he intended to pay the fees on the trailer and Volkswagen. He replied he would not tender the fees unless he could pay with gold or silver at the daily rate. Because the fees remained unpaid, a "seize and sell" order was issued by the DMV registrar. Such orders are issued by the Sacramento office after a hearing has been held and the fees have been determined to be owing and are not received within a certain time. DMV agents of the special investigations branch, charged with enforcing the seize and sell orders, act solely on the face of the orders; they are presumed to be valid. Once an order is issued, it is the duty of a special investigations agent to carry it out. Under DMV policy, the agent may go onto private property to seize a vehicle even if it has not been operating on the public highways, so long as a seize and sell order has been issued.

On February 3, 1983, Black and Hurd, armed with the seizure order, went to the Siskiyou County Sheriff's office and requested law enforcement assistance in carrying out the order. Black believed plaintiffs might resort to violence, because of the gun reference made when she and Hurd collected the fees on the jeep. Black showed the seizure order to Captain Jordan of the sheriff's department, who assigned Deputy Charlie Samples to accompany them.

---

[3] A POMC is a type of promissory note which is valid for 120 days or until an official determination is made as to what type of currency has been authorized as a substitution for gold and silver as the money of account of the United States. Those who use POMCs believe that only gold and silver are legal currency.

Samples discussed the request with Bradford, whose desk is near Samples' in city hall, and Bradford volunteered to accompany Samples. Bradford was assisted by Kenneth Fector, a nonuniformed employee of the Etna Police Department. Samples, Bradford, Fector, Black, and Hurd proceeded to plaintiffs' residence. When they arrived, the gate was open and the vehicles were to the right of the driveway. Plaintiffs were not at home but arrived shortly thereafter. Hurd refused to show plaintiff Pollard the seizure order and a confrontation ensued. Pollard attempted to block the Volkswagen by moving his tractor behind it, but was thwarted by Bradford who stood in the tractor's path. Plaintiffs informed Black and Hurd the vehicles had not been moved since 1982 and were inoperable. Pollard also informed Black he had been told by an employee of the Yreka branch of the DMV that he need not register a vehicle which was not being operated on public highways. Black went ahead with the impound procedure because she had a valid seizure order. Bradford threatened Pollard by quoting section 148 of the Penal Code, resisting an officer, to him. Upon the advice of their attorney, plaintiffs paid the fees in legal tender.

Plaintiffs filed a complaint for deprivation of civil rights under 42 United States Code section 1983,[4] alleging the defendants' conduct had deprived them of their constitutional protection against illegal searches and seizures, invaded their privacy, and deprived them of life, liberty, and property without due process of law. The gist of plaintiffs' complaint appears to be that they did not in fact owe any registration fees because the vehicles were not being operated upon public highways, thus any action taken pursuant to or in connection with the seizure order was illegal. The trial court granted each of the separate motions for summary judgment filed by Meese and the DMV, Hurd and Black, Bradford and the City of Etna, and the County of Siskiyou and its Sheriff, Laurence "Bud" Taylor.

I

For purposes of convenience, we shall address the three categories of defendants (state, county, and city) separately.

---

[4]"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

STATE OF CALIFORNIA, DEPARTMENT OF
MOTOR VEHICLES, GEORGE MEESE (DIRECTOR OF DMV), AND
DMV AGENTS HURD AND BLACK

■ We begin by summarily dismissing the objection to the summary judgment in favor of Meese. Meese was not the Director of the Department of Motor Vehicles at the time of the underlying incident. He did not assume that position until March 14, 1983. Plaintiffs appear to concede the issue, as they raise no argument regarding Meese's actions, save a statement in their factual summary indicating they were misled as to who in fact was the Director of the DMV at the time of the incident. Quite clearly, Meese cannot be in any way liable if he was not the Director of the DMV at the time of the confrontation and was not otherwise involved. Plaintiffs do not allege Meese held some other position with the DMV prior to being named director.

■ Next, plaintiffs contend the trial court erred in finding the State of California (State) and its agency, the DMV, are not amenable to suit under 42 United States Code section 1983 (hereafter section 1983) in an action brought in state court. They argue federal case law is in conflict over whether a state is a "person" within the meaning of section 1983 and that those cases holding a state may not be sued under section 1983 in an action brought in federal court rely upon the Eleventh Amendment, which is inapplicable to a cause of action brought in state court.

In *Quern* v. *Jordan* (1979) 440 U.S. 332 [59 L.Ed.2d 358, 99 S.Ct. 1139], the Supreme Court firmly held that states were not amenable to suit under section 1983 because of the immunity conferred upon them by the Eleventh Amendment. (440 U.S. at pp. 342-345 [59 L.Ed.2d at pp. 367-369].) Both *Quern* and its predecessor, *Edelman* v. *Jordan* (1974) 415 U.S. 651 [39 L.Ed.2d 662, 94 S.Ct. 1347], involved an action brought against a state or its officials in *federal* court. ■ ■ fn. ■ Plaintiffs argue *Quern* is inapposite, as they have chosen to proceed in state court,[5] thus alleviating any potential Eleventh Amendment problems. They do not rely on any direct decisional holding but rather primarily upon a footnote in *Maine* v. *Thiboutot* (1980) 448 U.S. 1 [65 L.Ed.2d 555, 100 S.Ct. 2502]. The plaintiffs in *Thiboutot* sued the State of Maine and its Commissioner of Human Services in state court under section 1983. The issue before the court was whether section 1983 encompassed actions based upon purely statutory violations of federal law and if so, whether attorney fees under 42 United States Code

---

[5]The state courts of California enjoy concurrent jurisdiction with the federal courts to hear actions brought under section 1983. (*Williams* v. *Horvath* (1976) 16 Cal.3d 834 [129 Cal.Rptr. 453, 548 P.2d 1125]; *Bach* v. *County of Butte* (1983) 147 Cal.App.3d 554, 560 [195 Cal.Rptr. 268].)

section 1988 could be awarded to the prevailing party. (*Id.,* at p. 3 [65 L.Ed.2d at p. 558].) In its discussion regarding the availability of attorney fees, the court dropped a footnote discussing the power reserved to Congress by section 5 of the Fourteenth Amendment to set aside Eleventh Amendment immunity in certain cases and stated, "No Eleventh Amendment question is present, of course, where an action is brought in a state court since the Amendment, by its terms, restrains only '[t]he Judicial power of the United States.'" (448 U.S. at pp. 9-10, fn. 7 [65 L.Ed.2d at pp. 562-563].)

That footnote has not gone unnoticed, either by the courts or commentators. (See *Greene* v. *Zank* (1984) 158 Cal.App.3d 497, 502, fn. 3 [204 Cal.Rptr. 770]; Wolcher, *Sovereign Immunity and the Supremacy Clause: Damages Against States in Their Own Courts for Constitutional Violations* (1981) 69 Cal.L.Rev. 189, 256, fn. 298, pp. 255-260 generally.) However, the majority of state courts which have directly addressed the issue of whether the holding of *Quern* is applicable to actions in state courts have held that it is. (See *Merritt* v. *State* (1985) 108 Idaho 20 [696 P.2d 871, 877], and cases cited therein; *Rains* v. *State* (1983) 100 Wn.2d 660 [674 P.2d 165, 170]; *Edgar* v. *State* (1979) 92 Wn.2d 217 [595 P.2d 534, 537-538], cert. den., 444 U.S. 1077 [62 L.Ed.2d 760, 100 S.Ct. 1026].)[6]

[6]In passing, we believe the holding of *Edgar* v. *State, supra,* 595 P.2d 534, and cases following or agreeing with it, is correct. The United States Supreme Court has not yet decided the issue, and we are unwilling to find the footnote in *Thiboutot* dispositive. Indeed, in *Maher* v. *Gagne* (1980) 448 U.S. 122 [65 L.Ed.2d 653, 100 S.Ct. 2570], decided the same day as *Thiboutot,* the Supreme Court noted "The Eleventh Amendment issue was not before the Court in *Thiboutot* because that case involved an award of fees by a state court pursuant to § 1988. *Ante,* at 9, n. 7." (448 U.S. at p. 130, fn. 12 [65 L.Ed.2d at pp. 661-662, fn. 12].) As one commentator stated, "[I]nferences from *Thiboutot* must be drawn with some caution, for footnotes are a dangerous place to seek authoritative statements of law, particularly in a field as complex as this." (Fletcher, *A Historical Interpretation of the Eleventh Amendment: A Narrow Construction of an Affirmative Grant of Jurisdiction Rather than a Prohibition Against Jurisdiction* (1983) 35 Stan.L.Rev. 1033, 1097.)

Moreover, we recently held that the state courts of California should apply federal law to determine whether a complaint pleads a cause of action under section 1983 sufficient to survive a general demurrer. (*Bach* v. *County of Butte, supra,* 147 Cal.App.3d at p. 563.) The decision was based in part upon the well settled rule "that since an action under section 1983 is based on federal statutory law, state courts look to federal law to determine what conduct gives rise to an action under the statute." (*Id.,* at p. 560.) *Greene* v. *Zank, supra,* 158 Cal.App.3d 497, also held "Thus, where section 1983 claims are submitted to and heard by state courts, it is clear that relevant section 1983 substantive rules must be applied by those courts. [Citations.] These substantive rules include the elements necessary for the prima facie section 1983 cause of action and damages, as well as rules governing absolute and qualified immunity. [Citation.]" (*Id.,* at p. 503.) In *Sykes* v. *State of California (Dept. of Motor Vehicles)* (9th Cir. 1974) 497 F.2d 197, 201, the court held the DMV is not a "person" within the meaning of section 1983. Although the *Sykes* case cites *Monroe* v. *Pape* (1961) 365 U.S. 167 [5 L.Ed.2d 492, 81 S.Ct. 473], which has since been overruled in *Monell* v. *New York City Dept. of Soc. Serv.* (1978) 436 U.S. 658 [56 L.Ed.2d 611, 98 S.Ct. 2018], its reasoning is still sound, as the DMV is but an arm of the state, and is thus immune from suit under the holding of *Quern* v. *Jordan, supra,* 440 U.S. 332 [59 L.Ed.2d 358].

Here, defendants DMV, State of California, and Meese insist they are not necessarily raising an Eleventh Amendment defense but are instead relying on the defense that the State and DMV are not "persons" under section 1983. (See, e.g., *Familias Unidas* v. *Briscoe* (5th Cir. 1980) 619 F.2d 391, 404-405; *Garrett* v. *State of Ill.* (7th Cir. 1980) 612 F.2d 1038, 1040; *Louis* v. *Supreme Court of Nevada* (D.Nev. 1980) 490 F.Supp. 1174, 1180; *Highfield Water Co.* v. *Public Service Com'n.* (D.Md. 1980) 488 F.Supp. 1176, 1194; *Bailey* v. *Ohio State University* (S.D.Ohio 1980) 487 F.Supp. 601, 603.) Upon reading these cases, one might conclude the questions of whether a state is immune from suit because of the Eleventh Amendment or whether it is immune because it is not a "person" are one and the same, i.e., a state is not a "person" under section 1983 because of the Eleventh Amendment. However, this is not necessarily so.

One case observed "two traditional obstacles to suing states in federal courts under 42 U.S.C. § 1983: (1) The eleventh amendment bar against suing states in federal courts; and (2) judicial interpretations of § 1983 holding that states are not 'persons' within the meaning of the statute." (Fn. omitted; *Verner* v. *State of Colo.* (D.Colo. 1982) 533 F.Supp. 1109, 1113.) Although a number of cases have held that states and political subdivisions may be sued as "persons" under section 1983 (see, e.g., *Marrapese* v. *State of R.I.* (D.R.I. 1980) 500 F.Supp. 1207, 1212; *Atchison* v. *Nelson* (D.Wyo. 1978) 460 F.Supp. 1102, 1106-1107; *R.I. Affiliate Am. Civ. Liberties Union* v. *R.I. Lottery Com.* (D.R.I. 1982) 553 F.Supp. 752, 767; *Smith* v. *State* (1983) 122 Mich.App. 340 [333 N.W.2d 50, 55]), they have done so either by reason of statutory waiver of their Eleventh Amendment immunity or because of an express waiver. The bar of the Eleventh Amendment has not been eroded. (See, e.g., *Marrapese* v. *State of R.I.*, *supra*, 500 F.Supp. at p. 1212.)

Moreover, this court has previously concluded that a state is not a "person" under section 1983 and we find no reason to reject that holding or reasoning. (*Taylor* v. *Mitzel* (1978) 82 Cal.App.3d 665, 670 [147 Cal.Rptr. 323]; see also *Mezey* v. *State of California* (1984) 161 Cal.App.3d 1060, 1065 [208 Cal.Rptr. 40].)

■ As stated earlier, the thrust of plaintiffs' complaint is that the DMV, through its agents, wrongly attempted to collect registration fees upon vehicles which were not subject to such fees because they were not being operated on public highways. Plaintiffs argue that had the DMV properly investigated the matter, this incident would not have occurred. They allege the restriction of their movements and the taking of their money deprived them of life, liberty, and property without due process of law.

■ A plaintiff stating a cause of action under section 1983 must show not only that the defendant acted under color of state law and that such conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States, but that such deprivation occurred without due process of law. (*Parratt* v. *Taylor* (1981) 451 U.S. 527, 535-537 [68 L.Ed.2d 420, 428-430, 101 S.Ct. 1908]; *Haygood* v. *Younger* (9th Cir. 1983) 718 F.2d 1472.) When a state-ordered deprivation occurs, the deprived party must be given notice and an opportunity to be heard, either prior to or following the deprivation. (*Parratt* v. *Taylor, supra,* 451 U.S. at pp. 537-541 [68 L.Ed.2d at pp. 429-432].) ■ Plaintiffs were given both notice and an opportunity to be heard. First, the DMV sent a form notice telling them the registration fees were due and advising them of their right to a hearing to contest the fees. Plaintiffs requested a hearing and attended it; by their choice they raised only the issue of the constitutionality of using federal reserve notes to pay the fees and did not inform the hearing officer the vehicles were inoperable.[7]

Warren Wolfe, chief of the division of registration and investigative services of the DMV, testified registration renewal notices are automatically sent to vehicle owners each year. If the owner indicates a desire to renew the registration (usually by paying the fees), the department assumes, logically, that the vehicle is going to be operated on public highways. In his declaration, plaintiff Pollard admits he intended to pay the fees, albeit not with federal reserve notes. The purpose of the hearing held when fees are contested is to give the vehicle owner the opportunity to inform the DMV the vehicle is inoperable, whether by choice or because it has been totalled, etc. Plaintiffs chose not to do so. After the hearing, it was determined the fees were due, and when they remained unpaid, they constituted a lien upon the vehicles. (Veh. Code, § 9800.) Such vehicles are subject to seizure. (Veh. Code, § 9801.) It was not until Black and Hurd actually attempted to seize the vehicles that plaintiffs finally informed them they were inoperable. By then, Black and Hurd were in possession of an order which was com-

---

[7]The various depositions, declarations, and reports filed in support of the motions for summary judgment are all in harmony in establishing plaintiffs did *not* inform the hearing officer the vehicles were inoperable, with the exception of a declaration filed by plaintiff Pollard, wherein he states he did so inform the officer. The trial court noted a conflict between this declaration and Pollard's deposition, wherein he states he never informed the officers the vehicles were inoperable. Both documents were signed under penalty of perjury. The court attempted to obtain a recording of the hearing, but found it was no longer available. It is clear from its comments in ruling on the motions the court chose to disregard that portion of the declaration. Pollard also states in his declaration he told Black in November 1982 that the vehicles were inoperable, but "if [he] decided to use them [he] may just pay the fees needed in gold and silver coin." The statement is equivocal, and does not serve as notice to Black that the vehicles were actually inoperable. Pollard states he contacted the Yreka branch office of the DMV and asked an employee if he must pay fees on an inoperable vehicle, but does not contend he identified himself at that time.

pletely valid based upon information made available to the DMV and were justified in carrying out their duties. Although a deprivation may have taken place, it was not without due process of law, thus no cause of action under section 1983 exists.

Nor did the DMV or its agents violate the Fourth Amendment. The Fourth Amendment protects against *unreasonable* searches and seizures. The entry onto plaintiffs' property and the "seizure" of the vehicles in lieu of the fees were made according to law.

■ Plaintiffs also contend the trial court erred in awarding defendants State, DMV, and Meese attorney fees. The court granted the motions for summary judgment by the State and the DMV on the basis of the cases which establish that those entities are not amenable to suit under section 1983, and the motion of Meese because he was not the Director of the DMV at the time of the attempted seizure. The court found the inclusion of these defendants in the action "is so clearly contrary to the established law in this matter that it can only be characterized as frivolous and in bad faith" and awarded those parties attorney fees under Code of Civil Procedure section 128.5. We agree with the trial court the order for an award of fees to the State, DMV, and Meese was proper.

Code of Civil Procedure section 128.5 allows a court to award expenses, including attorney fees, incurred by another party as the result of tactics or actions not based on good faith which are frivolous or cause unnecessary delay.

■ Plaintiffs also argue agents Black and Hurd are liable under section 1983 because they acted with blind disregard to the fact the vehicles were inoperable, failed to follow DMV policies, and illegally entered their property.

Recently, the Supreme Court set forth the test for determining whether a qualified or good faith immunity exists for public officials. The qualified immunity acts as a buffer between true abuses by public officials and insubstantial lawsuits which must be quickly terminated. (*Harlow* v. *Fitzgerald* (1982) 457 U.S. 800, 814 [73 L.Ed.2d 396, 407-408, 102 S.Ct. 2727].) In *Harlow,* the court rejected the element of subjective good faith as part of the test and instead concluded "that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. ■ We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known." (457 U.S. at pp. 817-818 [73 L.Ed.2d at p. 410].)

█ Applying this test to the facts before us, we conclude Hurd and Black are shielded by qualified immunity. As discussed earlier, the DMV issued the seizure order after following procedures which fully protected plaintiffs' right to due process of law. Hurd and Black were justified in believing the vehicles were being operated on public highways and thus subject to registration fees, because of plaintiffs' actions. Plaintiffs did not deny the fees were due; they only protested the method of payment required by the DMV. It is unclear from the depositions and declarations what condition the vehicles were in when Hurd and Black arrived at plaintiffs' residence. While it is true that at the time seizure order was executed, plaintiffs informed the agents the vehicles were inoperative, and Black, in reviewing the file, noticed the issue of operability had not been raised at the hearing, the fact remains Black and Hurd had a valid seizure order and were justified in enforcing it. Mr. Richard Taylor of the DMV stated it was department policy to act solely on the order. The order authorizes field agents to enter private property and seize a vehicle upon which fees have not been paid. Since due process is followed prior to the order being issued, there is nothing inherently unconstitutional about this policy. Under the *Harlow* test, Black and Hurd did not violate any clearly established statutory or constitutional rights and are thus immune from liability. At worst, perhaps their behavior might have been offensive to plaintiffs but did not rise to constitutional dimensions.

COUNTY OF SISKIYOU, SHERIFF LAURENCE "BUD" TAYLOR

█ Plaintiffs contend Sheriff Taylor created a departmental policy which resulted in the deprivation of their constitutional rights. Presumably, the county was charged with liability as the employer of Sheriff Taylor, and with having developed or established the allegedly offensive policy. A local government cannot be liable in a section 1983 action on a theory of respondeat superior, but only if the execution of the government's policy or custom results in injury. (*Monell* v. *New York Dept. of Soc. Serv., supra,* 436 U.S. at p. 694 [56 L.Ed.2d at p. 638].)

In their complaint, plaintiffs allege Sheriff Taylor created a departmental policy which resulted in the violation of their rights. Yet, when deposed, plaintiffs were unable to identify the alleged policy. In his deposition, plaintiff Pollard stated he knew of no specific policy and merely concluded that since a sheriff's deputy was at the scene, the department must have a policy of condoning unconstitutional behavior.

Recently, the Supreme Court further clarified the definition of a "policy" for purposes of municipal liability under section 1983. In *Oklahoma City* v.

*Tuttle* (1985) — U.S. — [85 L.Ed.2d 791, 105 S.Ct. 2427], the plaintiff's husband was shot and killed outside a bar in which a robbery had been reported in progress. The plaintiff's theory of liability on behalf of the city was that the city had a "policy" of training officers, and that this "policy" resulted in inadequate training and ultimately a constitutional violation. The court recognized the "policy" relied on was far more nebulous than that relied upon in *Monell, supra,* (policy compelling pregnant employees to take mandatory leave before required to do so for medical reasons), and stated, "To establish the constitutional violation in *Monell* no evidence was needed other than a statement of the policy by the municipal corporation, and its exercise; but the type of 'policy' upon which respondent relies, and its causal relation to the alleged constitutional violation, are not susceptible to such easy proof. In the first place, the word 'policy' generally implies a course of action consciously chosen from among various alternatives; it is therefore difficult in one sense even to accept the submission that someone pursues a 'policy' of 'inadequate training,' unless evidence be adduced which proves that the inadequacies resulted from conscious choice—that is, proof that the policymakers deliberately chose a training program which would prove inadequate. And in the second place, some limitation must be placed on establishing municipal liability through policies that are not themselves unconstitutional, or the test set out in *Monell* will become a dead letter. Obviously, if one retreats far enough from a constitutional violation some municipal 'policy' can be identified behind almost any such harm inflicted by a municipal official; for example, Rotramel would never have killed Tuttle if Oklahoma City did not have a 'policy' of establishing a police force. But *Monell* must be taken to require proof of a city policy different in kind from this latter example before a claim can be sent to a jury on the theory that a particular violation was 'caused' by the municipal 'policy.' At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." (Fn. omitted; *id.,* at p. — [85 L.Ed.2d at pp. 803-804].)

Plaintiffs have failed to establish such a link.

The only "policy" being followed by the sheriff's department was that of keeping the peace. The sheriff (and his deputies) are charged by law with preserving the peace and suppressing any affrays, breaches of peace, riots, or insurrections. (Gov. Code, §§ 26600, 26602.) Captain Jordan of the sheriff's department testified the request from Black and Hurd for law enforcement assistance was considered a routine call. Such a call is common and based upon Government Code section 26600, the sheriff's department will provide peacekeeping assistance to any person or agency who requests it. In fact, the provision of such services is not, per se, a departmental policy, and is no different than responding to a burglary call, for instance.

In the absence of a showing of any policy which violated plaintiffs' rights, summary judgment was properly granted. (*Villa* v. *Franzen* (N.D.Ill. 1981) 511 F.Supp. 231, 235.)

Sheriff Taylor cannot be held liable unless he personally acted tortiously. (*Milton* v. *Nelson* (9th Cir. 1975) 527 F.2d 1158, 1159; *Baskin* v. *Parker* (5th Cir. 1979) 602 F.2d 1205, 1208 [51 A.L.R.Fed. 269].) Sheriff Taylor did not know of the underlying events until they had taken place. He became aware of the incident only through reports and a visit from plaintiffs. Captain Jordan, who assigned Deputy Samples to accompany Hurd and Black, saw the seizure order and believed it to be valid. Plaintiffs stated Deputy Samples made no threats, was not rude, acted "like a gentleman," and did his job in keeping the peace.

Neither the County of Siskiyou nor its employees in any way violated a constitutional right. Deputy Samples performed his duty as required by law, and by plaintiffs' own admission did so in an admirable manner.

■ The trial court awarded the county and Sheriff Taylor attorney fees under 42 United States Code section 1988, as the prevailing parties. The court also found the inclusion of these parties to be frivolous under the circumstances. Section 1988 allows the court, in its discretion, to award attorney fees to the prevailing party. An award of fees under this section will not be disturbed on appeal absent an abuse of that discretion. (*O'Neil* v. *City of Lake Oswego* (9th Cir. 1981) 642 F.2d 367, 370.) We find no abuse here. Plaintiffs claimed a departmental policy violated their rights but were unable to identify such a policy. The county defendants were acting within the law and were fully justified in their actions, which really amounted to no more than being at the scene.

## City of Etna, Chief David Bradford (Etna Police Department)

■ Plaintiffs argue the evidence showed Chief Bradford acted in bad faith and actively engaged in depriving plaintiffs of their constitutional protections. Plaintiffs correctly point to several conflicting factual allegations, but as we shall discuss, they are of no import because of the lack of an underlying constitutional violation.

Penal Code section 830.1 extends the jurisdiction of various law enforcement officers, including police officers, to any place in the state where the officer has obtained the prior consent of the sheriff if such place is outside city limits. (Pen. Code, § 830.1, subd. (a)(2).) A copy of an agreement between the City of Etna Police Department and the Sheriff of Siskiyou County, conferring such consent, was submitted with the moving papers.

Plaintiffs object to the admission of the agreement for the first time on appeal, arguing it violates the best evidence rule. (Evid. Code, 1500.) The argument fails for two reasons. First, the copy of the document was merely cumulative, as Chief Bradford stated in his declaration he had obtained consent pursuant to Penal Code section 830.1 to conduct official acts outside the Etna city limits. Second, Evidence Code section 1530, subdivision (a)(1), permits a copy of a writing in the custody of a public entity to be admitted if the copy purports to be published by the authority of the public entity therein in which the writing is kept. The copy of the agreement is attached to Bradford's declaration, wherein he states it is a true and correct copy. The document on its face appears to be published by a public entity, the Siskiyou County Sheriff's office. The requirements of Evidence Code section 1530, subdivision (a)(1), were satisfied. (*People* v. *Abelson* (1980) 104 Cal.App.3d Supp. 16, 19 [164 Cal.Rptr. 369].)

Once again, we must apply the *Harlow* test to determine whether a qualified immunity exists. Plaintiffs argue the qualified immunity is not available to Bradford because the evidence shows he did not possess a subjective good faith belief. They rely upon two cases, both of which were decided prior to *Harlow,* which eliminated the subjective element of the qualified immunity test. (457 U.S. at pp. 815-817 [73 L.Ed.2d at pp. 408-410].)

Bradford was on the scene to keep the peace. As plaintiffs concede, "a perfectly legitimate reason" existed for Bradford to be on their property, as Vehicle Code section 9801, subdivision (h), provides for municipal law enforcement agencies to assist with a seizure. We do not condone Bradford's behavior. The overall impression left by the record is that Bradford acted with arrogance and self-importance, and apparently has little tolerance for those holding alternative beliefs. Deputy Samples, who has no reason not to tell the truth, stated Bradford volunteered to go along with Samples. Bradford and Samples share an office, and Samples mentioned the mission to Bradford at city hall when the call came in. Samples had been to plaintiffs' residence before and knew how to get there. In his deposition and declaration signed under penalty of perjury, Bradford stated Samples requested his assistance because he (Samples) did not know where plaintiffs lived. He stated he was contacted at home, by telephone. Once at the plaintiffs' residence, Bradford stood in front of plaintiffs' tractor to prevent them from moving it, and implied to plaintiff Pollard he might be interfering with a police officer carrying out his duties. It is interesting that Deputy Samples, who originally received the call and was thus the primary officer to oversee that peace was kept, did not find it necessary to take any aggressive steps and was polite at all times to plaintiffs. However, rudeness and arrogance alone do not violate the Constitution. Bradford was justified in being at the

scene, since Black and Hurd were enforcing a valid seizure order. (Veh. Code, § 9801, subd. (h).) Plaintiffs' cause of action against these defendants fails as a matter of law for want of a constitutional violation. (See *Harris* v. *City of Roseburg* (9th Cir. 1981) 664 F.2d 1121, 1127-1129 [65 A.L.R.Fed. 792].)

Plaintiffs have not alleged that any policy of the City of Etna deprived them of constitutional protections. The motion of summary judgment on behalf of Bradford and the city was properly granted.

The judgments are affirmed. Defendant City of Etna and David Bradford's request for an award of attorney fees on appeal is denied.

Carr, J., and Sparks, J., concurred.