[No. A064827. First Dist., Div. Three. Oct 25, 1995.]

LYNN ANDRUS et al., Plaintiffs, v.
ARMAND ESTRADA, Defendant and Respondent;
LAW OFFICES OF HAYES & MITCHELL et al., Objectors and
Appellants.

## COUNSEL

Paul N. Halvonik for Objectors and Appellants.

Armand M. Estrada, in pro. per., Estrada & Thomson and William D. Thomson for Defendant and Respondent.

## OPINION

**CORRIGAN, J.**—This appeal involves a dispute between lawyers for the litigants below. Plaintiffs' counsel appeal, on their own behalf, from the

court's imposition of sanctions for the filing of a frivolous lawsuit. They allege the court's order was unconstitutional, exceeded its jurisdiction, was defective in form, and was inconsistent with the court's denial of sanctions to another defendant. We reject all four allegations and affirm the court's imposition of sanctions.

### STATEMENT OF FACTS

On April 1, 1992, Lynn Andrus and Bret Bevilacqua (plaintiffs) entered into a written agreement with Miriam Wain and Miriam Wain Enterprises (hereafter jointly referred to as Wain) to rent a home in Pleasanton for $1,095, due on the first of each month. On July 9, 1992, Wain, through her attorney Armand Estrada (respondent), served plaintiffs with notice to pay rent or quit the premises within three days, alleging they had failed to pay the July rent. On July 14, Estrada filed, on Wain's behalf, an unlawful detainer action against plaintiffs in the Livermore-Pleasanton-Dublin Municipal Court. Also on July 14, Wain received the July rent check from plaintiffs by mail postmarked July 2. Upon Wain's instructions, Estrada dismissed the unlawful detainer action on July 15.

On August 21, 1992, plaintiffs filed a 13-count complaint against Wain and Estrada in the Southern Division of the Alameda County Superior Court, located in Hayward.[1] Plaintiffs were represented by the Law Offices of Hayes & Mitchell (appellants).

On September 11, 1992, Estrada requested that plaintiffs agree to a change of venue to the Eastern Division of the Alameda County Superior Court in Pleasanton in conformance with the local rules of court, given that the real property underlying the complaint is located in the Eastern Division. Plaintiffs failed to respond to this written request.

On September 25, Estrada moved for a change of venue and for sanctions. Plaintiffs formally opposed the motion. On November 5, the court granted the motion for change of venue but denied the motion for sanctions.

On December 4, Estrada demurred to the 13th cause of action (conspiracy) on the ground of plaintiffs' failure to comply with Civil Code section 1714.10, subdivision (a).[2] On December 17, Wain filed a general demurrer for failure to state a cause of action on the grounds that the filing of the

---

[1]This complaint alleged breach of contract, constructive eviction, breach of the covenant of good faith and fair dealing, fraud, negligent misrepresentation, suppression of fact, negligence, breach of fiduciary duty, tort of another, defamation, malicious prosecution, abuse of process, and conspiracy.

[2]Civil Code section 1714.10, subdivision (a) provides in part: "No cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or

three-day notice and the unlawful detainer action were privileged under Civil Code section 47, subdivision (b).

On January 11, 1993, the court sustained Estrada's demurrer to the 13th cause of action (conspiracy) with leave to amend. On January 13, plaintiffs filed an amended complaint, omitting Estrada from the conspiracy cause of action. On January 25, the court sustained Wain's general demurrer as to the 10th cause of action (defamation) only, without leave to amend.[3] The court overruled the demurrer as to the remaining causes of action.

On July 16, 1993, Estrada filed a motion for summary judgment and summary adjudication. On August 23, the court granted the motion for summary judgment. In granting the motion, the court said: "I can see no reason for filing—for your having filed suit against the attorney in this matter, and in fact he may have a cause of action back against you for malicious prosecution or abuse of process for suing him." The court went on to say: "If in fact he had asked for sanctions in this matter I very well might have considered them. I think this was a frivolous lawsuit against the attorney."

On September 29, Estrada moved for an award of attorney fees and costs totaling $12,401.50 or, in the alternative, for sanctions.

On October 14, Wain moved for summary judgment and/or summary adjudication.

On October 19, plaintiffs filed a motion to tax costs, alleging various reasons why Estrada was not entitled to recover attorney fees.[4] Also on this date, plaintiffs' own attorneys, appellants Hayes & Mitchell, moved to withdraw as counsel because of irremediable conflicts of interest. This latter motion was granted on November 17.

---

compromise a claim or dispute, and which is based upon the attorney's representation of the client, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes the claim for civil conspiracy to be filed after the court determines that the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action. The court may allow the filing of a pleading claiming liability based upon such a civil conspiracy following the filing of a verified petition therefor accompanied by the proposed pleading and supporting affidavits stating the facts upon which the liability is based. . . ." Subdivision (b) provides in part: "Failure to obtain a court order where required by subdivision (a) shall be a defense to any action for civil conspiracy filed in violation thereof. . . ."

[3] Wain was deemed by the court to have demurred to the amended complaint.

[4] These reasons included: (1) the rental contract did not provide for an award of attorney fees, (2) attorney fees are not awardable in defense of a tort action, and (3) the costs claimed exceeded those allowable.

On January 5, 1994, plaintiffs' new counsel filed additional points and authorities in opposition to Estrada's motion for sanctions, essentially contending that plaintiffs relied upon appellants in filing the initial suit against Estrada and so could not have known the suit was frivolous. Appellants filed their own opposition to attorney fees and sanctions.

On January 12, the court granted plaintiffs' request to dismiss their action against Wain.[5] The court also granted plaintiffs' motion to tax costs, thus denying Estrada's request for attorney fees.[6] Finally, the court awarded Estrada $4,000 in sanctions, pursuant to Code of Civil Procedure section 128.5.[7] Plaintiffs again argued they should not be responsible for sanctions when they merely relied upon the legal advice provided by Hayes & Mitchell. Neither appellants nor their counsel appeared at the hearing.[8] The court ordered sanctions payable by both plaintiffs and Hayes & Mitchell.

Thereafter, Estrada's attorney sent opposing counsel a proposed order awarding sanctions. By letter dated January 18, counsel for Hayes & Mitchell objected to the court's summary award of sanctions under section 128.5, in lieu of a malicious prosecution suit which would have afforded his clients the right to a jury trial. The court signed Estrada's proposed order on January 31, 1994.

On January 26, Wain moved for an award of attorney fees in the form of sanctions pursuant to section 128.5. On February 16, the court denied that motion.

Hayes & Mitchell filed a notice of appeal on February 10, 1994. Plaintiffs below do not appeal.

---

[5]This action by the court rendered Wain's motion for summary judgment or adjudication moot.

[6]Estrada was awarded $218 in costs.

[7]As of January 1994, section 128.5, subdivision (a) read in part: "Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. . . ." Subdivision (b) read: "For purposes of this section: [¶] (1) 'Actions or tactics' include, but are not limited to, the making or opposing of motions or the filing and service of a complaint or cross-complaint. The mere filing of a complaint without service thereof on an opposing party does not constitute 'actions or tactics' for purposes of this section. [¶] (2) 'Frivolous' means (A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party." (Stats. 1990, ch. 887, § 1, p. 3764.) This section was amended as of January 1995. (Stats. 1994, ch. 1062, § 1.) The amendment is not material to the case before us.

All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[8]Mitchell apparently telephoned counsel for Estrada on the morning of the hearing and offered to waive appeal in return for satisfaction of sanctions at $1,000.

## DISCUSSION

### I. *Constitutionality of Section 128.5*

Appellants first contend that the trial court's imposition of sanctions under section 128.5 was an unconstitutional substitution of judge-imposed sanctions for the common law action of malicious prosecution. In order to avoid rendering section 128.5 completely unconstitutional, appellants argue that sanctions can only be imposed under that statute for discrete litigation actions or tactics, rather than for the institution of the underlying frivolous claim itself. According to appellants, the only remedy for the bringing of a frivolous claim itself lies in the common law action for malicious prosecution, and, in such an action, they enjoy a common law right to a jury trial of which the court's order deprived them. We disagree. Appellants were not deprived of a common law right to jury trial; therefore, section 128.5 is not unconstitutional.

At the outset, we note that appellants misread section 128.5. Indeed, their position is contrary to the very language of the provision itself. Section 128.5, subdivision (a) empowers a trial court to award "reasonable expenses, *including attorney's fees*, incurred . . . as a result of bad-faith actions or tactics . . . ." (Italics added.) Subdivision (b)(1) defines actions or tactics as including: "the making or opposing of motions *or the filing and service of a complaint* or cross-complaint . . . ." (Italics added.) That subdivision goes on to say that: "The mere filing of a complaint *without* service thereof on an opposing party does not constitute 'actions or tactics' for purposes of this section." (Italics added.) Perforce, filing *and service* of a complaint may constitute such proscribed actions or tactics. A line of cases interpreting this statute has held that sanctions are available when the underlying action itself was totally without merit. (*Frank Annino & Sons Construction, Inc.* v. *McArthur Restaurants, Inc.* (1989) 215 Cal.App.3d 353, 359 [263 Cal.Rptr. 592]; *Lesser* v. *Huntington Harbor Corp.* (1985) 173 Cal.App.3d 922, 930 [219 Cal.Rptr. 562]; *Pyne* v. *Meese* (1985) 172 Cal.App.3d 392, 405 [218 Cal.Rptr. 87].) However, none of these cases addressed the particular claim that imposition of sanctions for the bringing of a suit was unconstitutional because it deprived a plaintiff (or, as here, plaintiffs' counsel) of the right to a jury trial on the issue of sanctions. It is on this constitutional challenge that appellants base their position.[9]

Appellants rely upon the watershed case of *People* v. *One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283 [231 P.2d 832] (hereafter *Chevrolet Coupe*) for

---

[9]Appellants rely upon *Lavine* v. *Hospital of the Good Samaritan* (1985) 169 Cal.App.3d 1019 [215 Cal.Rptr. 708] for the proposition that the use of section 128.5 to sanction the bringing of a suit in its entirety is unconstitutional. However, the court in *Lavine* specifically found the trial court had sanctioned only a discrete litigation tactic. (*Lavine, supra,* at pp.

the proposition that the Legislature cannot substitute equitable remedies, such as the judge-imposed sanctions under section 128.5, for a remedy that existed at common law and was tried to a jury. *Chevrolet Coupe* involved the forfeiture of a car used to transport marijuana. The owner of the car appealed the trial court's denial of a jury trial in the forfeiture proceeding. The Supreme Court reversed the forfeiture judgment, ruling that the Legislature could not substitute summary forfeiture provisions (under Health & Saf. Code, former §§ 11612, 11613) for common law forfeiture proceedings in which a jury trial was available. (*Chevrolet Coupe, supra,* at pp. 299-300, 303.)

The court in *Chevrolet Coupe* was explicit, however, in describing when a jury trial right obtained: " 'The right to trial by jury guaranteed by the Constitution[10] is the right as it existed at common law at the time the Constitution was adopted. [Citation.] The common law at the time the Constitution was adopted includes not only the *lex non scripta* but also the written statutes enacted by Parliament. [Citation.] The common law respecting trial by jury as it existed in 1850 is the rule of decision in this state. [Citation.] Any act of the Legislature attempting to abridge the constitutional right is void. [Citations.] It is the right to trial by jury as it existed at common law which is preserved; and what that right is, is a purely historical question, a fact which is to be ascertained like any other social, political or legal fact. The right is the historical right enjoyed at the time it was guaranteed by the Constitution. It is necessary, therefore, to ascertain what was the rule of the English common law upon this subject in 1850.' " (37 Cal.2d at pp. 286-287, fn. omitted.) The court went on to find that similar forfeiture proceedings were actions at English common law triable to a jury and that the appellant was, therefore, entitled to a jury in his forfeiture proceeding. (*Id.* at p. 300.)

Here, both the court and respondent viewed the imposition of sanctions as a substitute for a malicious prosecution action. When requesting sanctions in this case, Estrada argued that, although he had a cause of action for malicious prosecution, an award of sanctions would be "a much more efficient method of addressing the misuse of the legal system that has occurred." The court had earlier intimated that it felt Estrada potentially had a cause of action for malicious prosecution.

1027-1028.) Consequently, that case does not stand for the position appellants assert. Additionally, the court in *Lavine* held, to the extent section 128.5 eliminated the right to a jury trial in this civil context, there was no deprivation of due process in violation of the Fourteenth Amendment of the federal Constitution. (169 Cal.App.3d at p. 1028.) The court did not reach, as we do *post,* the question of whether section 128.5 violates the California Constitution's jury trial guarantee when used to sanction the bringing of a suit in its entirety.

[10]California Constitution, article I, section 16; California Constitution of 1849, article I, section 3.

■ "Malicious prosecution" is a phrase used generally in the law to designate the malicious prosecution of both criminal and civil suits. The two proceedings are both tort actions and share the same basic elements: (1) favorable termination of the prior proceeding, (2) lack of probable cause to support the original action, and (3) malice in bringing that action. (5 Witkin, Summary of Cal. Law (9th ed. 1988) § 431, pp. 513-514.) However, the two torts have different common law roots and are, in fact, examined in separate chapters of the Restatement of Torts. (Rest.2d Torts, §§ 653, 674, chs. 29, 30, pp. 404-473.) While the tortious wrongful prosecution in criminal cases was long an action at common law, civil wrongful prosecution has a more complicated history. (See 52 Am.Jur.2d, Malicious Prosecution, §§ 6-11, pp. 190-195; Prosser & Keeton, Torts (5th ed. 1984) § 120, p. 889.)

■ In England before 1269, an action existed at common law for wrongful civil prosecution. (52 Am.Jur.2d, Malicious Prosecution, § 9, p. 191.)[11] Such action did not require damage to the successful defendant beyond that caused by the mere filing of suit by an unsuccessful plaintiff. (52 Am.Jur.2d, *supra*, at p. 192.) Also at that time, there was no independent statutory provision for recovery of civil costs by a successful defendant. (*Id.* at p. 191.) The Statute of Marlbridge (52 Hen. III) was enacted in 1269 allowing successful defendants to recover costs and damages. The statute thus superseded the independent common law remedy. (52 Am.Jur.2d, *supra*, at pp. 191-192.) Thereafter, although actions for wrongful prosecution of a civil suit were permitted by additional specific statutes, the successful defendant had to show some deprivation of liberty or property beyond that occasioned by the mere bringing of the suit. (*Id.* at p. 192; see also 1 Harper et al., *op cit. supra*, pp. 464-471.)

American jurisdictions, in adopting the English common law, were divided over whether a successful defendant need show some special injury, usually arising out of seizure of his person or property, in order to recover in an action for wrongful civil prosecution. (52 Am.Jur.2d, Malicious Prosecution, § 10, p. 192.) This division was acknowledged, but not resolved, by the Supreme Court in *Smith* v. *George* (1877) 52 Cal. 341, 344. Thirteen years later, the Supreme Court recognized the predominance of the English rule, then rejected it, in *Eastin* v. *Bank of Stockton* (1884) 66 Cal. 123, 126 [4 P. 1106]: "The weight of the authorities, American as well as English, is against the maintenance of such an action; and so are most of the text-writers. The question has never been determined in this State, and we are,

---

[11]Contrary authority suggests that no such action existed. Instead, unsuccessful plaintiffs were often assessed a penalty, or amercement, commensurate with the harm caused but payable to the court rather than the successful defendant. (1 Harper et al., The Law of Torts (2d ed. 1986) § 4.8, p. 469, fn. 32.) Under either historical assessment, the Statute of Marlbridge, *post*, was transformative.

therefore, at liberty to adopt the rule that we think is founded on the better reason. . . . The English cases which deny the right to maintain the action, stand upon the ground that the successful defendant is adequately compensated for the damages he sustains by the costs allowed him by the statute. Those costs, it seems, include the attorney's charges for preparing the case for trial in all its parts, the fees of the witnesses and the court officials, and even the *honorarium* of the barrister who conducted the case in court. The reason upon which the English rule rests would not, therefore, seem to apply here, where the costs recoverable under the statute are confined to much narrower limits." The Supreme Court, therefore, found that a successful defendant had a cause of action for malicious civil prosecution in order to provide recovery for all damages beyond costs even where no seizure of his person or property occurred. (*Id.* at p. 127.)

"The chief basis for the remedy [for malicious civil prosecution] is said to be the fact that the costs awarded to the successful party do not include attorney's fees. [Citations.]" (5 Witkin, Summary of Cal. Law, *op cit. supra*, § 431, p. 512.) The English statute provided for the awarding of costs, including attorney fees, without jury trial. Absent some special injury beyond the financial loss ordinarily incurred in defending a civil suit, no tort action was available at common law. Because the action did not lie, an 1850 Englishman enjoyed no right to a jury trial for civil malicious prosecution unless he could show damages beyond the remedy provided in the Statute of Marlbridge. California's section 128.5 provides for the payment of "any reasonable expenses, *including attorney's fees.*" (Italics added.) It does not require, or speak to, an award of damages beyond expenses and fees. It operates in essence as an equivalent to the Statute of Marlbridge. Thus, under the aegis of section 128.5, modern Californians are not deprived of any jury trial right available to their Victorian counterparts.[12]

The Attorney General in *Chevrolet Coupe* argued that no right of jury trial existed in the case of forfeiture of an automobile because automobiles did not exist in 1850. The court rejected this argument: " 'In determining whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case—the gist of the action.' " (*Chevrolet Coupe, supra*, 37 Cal.2d at p. 299.) The court found the type of property involved was immaterial. When the action was for forfeiture of property used in violation of the law, the right of jury trial obtained. (*Id.* at p. 300.) There, because automobiles did not exist in 1850, the court was

---

[12]Section 128.5 did not abrogate the right to a jury trial in an action for malicious prosecution of a criminal suit because that section does not apply to criminal cases. (*People* v. *Cook* (1989) 209 Cal.App.3d 404, 409 [257 Cal.Rptr. 226].)

required to compare the automobile to the types of property that were the subject of forfeiture actions at common law (e.g., carriages, wagons, horses, or mules) in order to determine if the actions were of the same nature. (*Ibid.*) We need not engage in the same jurisprudential juxtapositioning. Malicious prosecution of a civil suit was not cognizable at English common law in 1850, whether the underlying action was one in defamation, personal injury, unlawful detainer, or any other claim. There our inquiry ends.

Furthermore, there exists no public policy reason that would cause us to find otherwise. To the contrary, the legislative intent in enacting section 128.5 in 1981 was clear: "It is the intent of this legislation to broaden the powers of trial courts to manage their calendars and provide for the expeditious processing of civil actions by authorizing monetary sanctions now not presently authorized by the interpretation of the law in Baugess [*sic*] v. Paine (1978), 22 Cal. 3d 626."[13] (Stats. 1981, ch. 762, § 2, p. 2968.) The Supreme Court echoed the Legislature's sentiment: "While the filing of frivolous lawsuits is certainly improper and cannot in any way be condoned, in our view the better means of addressing the problem of unjustified litigation is through the adoption of measures facilitating the speedy resolution of the initial lawsuit and authorizing the imposition of sanctions for frivolous or delaying conduct within that first action itself, rather than through an expansion of the opportunities for initiating one or more additional rounds of malicious prosecution litigation after the first action has been concluded. In recent years, the Legislature has taken several steps in this direction, enacting legislation to facilitate the early weeding out of patently meritless claims and to permit the imposition of sanctions in the initial lawsuit—against both litigants and attorneys—for frivolous or delaying conduct. (See, e.g., Code Civ. Proc., §§ 437c, 1038, *128.5*, 409.3.)" (*Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 873-874 [254 Cal.Rptr. 336, 765 P.2d 498], italics added.) Respondent's argument below that an award of sanctions is "a much more efficient method of addressing the misuse of the legal system that has occurred," is entirely consistent with this analysis.

It is important to note that the right to jury trial remains in malicious prosecution actions by virtue of post-1850 California common law. (*Eastin* v. *Bank of Stockton, supra,* 66 Cal. at p. 127.) We hold here only that the right to jury trial in this context is not constitutionally based, such that the Legislature's implementation of this more efficient statutory procedure does not violate the California Constitution.

---

[13]In that case, the Supreme Court ruled that the trial court lacked both inherent and *statutory* authority to impose the sanctions awarded. (*Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 638-639 [150 Cal.Rptr. 461, 586 P.2d 942].)

## II. *Trial Court's Jurisdiction*

 Appellants allege respondent's motion for sanctions under section 128.5 was an improperly brought motion for reconsideration over which the trial court lacked jurisdiction. Section 1008 governs motions for reconsideration. According to that section, a party whose original motion was denied in whole or in part may make a new application for the same order if supported by an affidavit detailing when and to what judge it was made; what was sought; what orders or decisions were made; and what new or different facts, law or circumstances would support a different outcome. (§ 1008, subd. (b).) These requirements are jurisdictional. (§ 1008, subd. (e).) Although appellants did not raise this allegation when they had the opportunity in the trial court, jurisdictional error is not waived by failure to object earlier. (*People* v. *Foster* (1993) 14 Cal.App.4th 939, 949 [18 Cal.Rptr.2d 1].) However, we do not agree that respondent's motion for sanctions following summary judgment was, indeed, a motion for reconsideration of his motion for sanctions following the change of venue.

It will be recalled that on September 25, 1992, respondent moved for change of venue from the southern to the eastern division of the superior court under section 396b, subdivision (a) and also requested sanctions under subdivision (b). In support of his sanctions request, respondent alleged further that, when informed the suit was improperly filed, appellants failed to stipulate to a change of venue. Following a contested hearing, the judge of the southern division granted the change of venue but denied sanctions.

On September 29, 1993, following the grant of summary judgment, respondent moved for sanctions under section 128.5, and the judge of the eastern division awarded them by an order signed January 31, 1994. Appellants' initial filing of the suit in the wrong division, their failure to stipulate to a change of venue, their opposition to that well-founded motion, and their failure to approve a proposed order granting change of venue were four of the eleven reasons why the court granted sanctions.[14]

The court's ultimate grant of sanctions was based upon appellants' entire pattern of conduct over the course of the litigation. The court of the eastern

---

[14]The court found: (a) the complaint against respondent was frivolous, totally without merit, and designed to harass; (b) the complaint was filed in the wrong judicial division; (c) appellants refused to stipulate to a change of venue; (d) appellants opposed a well-founded change of venue motion; (e) appellants failed to approve a proposed order granting change of venue; (f) the conspiracy action against respondent in his capacity as an attorney was not in compliance with Civil Code section 1714.10; (g) appellants refused to stipulate to amending the complaint to delete the conspiracy action; (h) appellants opposed a well-founded demurrer to the conspiracy action; (i) appellants advocated unfounded and untenable legal positions throughout the course of the litigation as evidenced by discovery responses, including the contention that respondent was liable for breach of contract even though he was not a party to the contract; (j) appellants opposed summary judgment and/or summary adjudication even

division was entitled to consider appellants' earlier behavior, even though the court of the southern division had found the behavior exhibited up to that point did not merit sanctions. In *Sabado* v. *Moraga* (1987) 189 Cal.App.3d 1 [234 Cal.Rptr. 249], sanctions were ordered early in the proceedings for a failure to comply with discovery based upon termination of a deposition. Sanctions were ordered again later in the proceedings, based upon the " 'continued difficulty in obtaining timely discovery . . . .' " (*Id.* at p. 10.) The court reversed the later order: "We agree that if an attorney continues to engage in dilatory tactics to prevent legitimate discovery a court should be able to consider past conduct in considering the attorney's bad faith on the subsequent occasions. Where, however, subsequent conduct is not the type that warrants the imposition of sanctions, past conduct which has already been considered by a court cannot justify the imposition of additional sanctions; otherwise an attorney might be punished twice for the very same conduct." (*Id.* at pp. 10-11.)

Implicit in the court's holding in *Sabado* v. *Moraga*, *supra*, is the rule that, where prior conduct has not been punished, it can contribute to a later award of sanctions based upon a more extensive course of conduct. The eastern division court would not have been permitted to rely upon the earlier behavior if appellants had previously been sanctioned for it in the southern division; such reliance would result in double punishment for the same conduct. Here, appellants were not sanctioned in the southern division. Consequently, their actions regarding the change of venue motion could be considered by the eastern division court as part of an entire course of conduct.

### III. *Formal Defect for Failure of Specificity*

Appellants also allege that the court's order was not in compliance with subdivision (c) of section 128.5, which reads in part: ". . . An order imposing expenses shall be in writing and shall recite in detail the conduct or circumstances justifying the order." Even if we found the court's order deficient, any such error would be waived. Appellants had an opportunity to review respondent's proposed order before the court signed it. Appellants made no objection to the specificity of the order. The specificity requirement of section 128.5, subdivision (c) is not jurisdictional in nature. Appellants cannot now claim on appeal that the order was deficient. (*Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 70-71, fn. 2 [64 Cal.Rptr. 785, 435 P.2d 553]; *E. F. Hutton & Co.* v. *City National Bank* (1983) 149 Cal.App.3d

though they were not seeking damages against respondent as to certain causes of action; and (k) appellants failed to follow local rules and procedures regarding the opposition to the summary judgment motion.

60, 65, fn. 1 [196 Cal.Rptr. 614] [where appellant was deemed to have waived statutorily required specificity in court order granting demurrer]; *Cohen* v. *Superior Court* (1966) 244 Cal.App.2d 650, 654-655 [53 Cal.Rptr. 378] [same].)

This view is in keeping with the Supreme Court's recently enunciated position in the context of criminal sentencing: "Routine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention. As in other waiver cases, we hope to reduce the number of errors committed in the first instance and preserve the judicial resources otherwise used to correct them." (*People* v. *Scott* (1994) 9 Cal.4th 331, 353 [36 Cal.Rptr.2d 627, 885 P.2d 1040].)

## IV. *Inconsistent Orders*

█ Finally, appellants allege the order of sanctions in respondent's case cannot stand because it is inconsistent with the court's later denial of sanctions to his client, Wain. As evidenced by the final order, the court's decision to impose sanctions was based upon a course of conduct involving 11 different actions or tactics by appellants. Only four of these ((b) to (e), fn. 14 *ante*, all involving improper venue) were actions taken by appellants against Wain also. The remaining seven actions or tactics were taken against respondent only. For instance, the improper filing of a conspiracy count against an attorney without complying with Civil Code section 1714.10 pertained to respondent only, as did the improper allegation of breach of contract against respondent when he was not a party to the contract. Simply, the court's orders are not inconsistent because they are not based upon the same evidence. (*Cavallaro* v. *Michelin Tire Corp.* (1979) 96 Cal.App.3d 95, 101 [157 Cal.Rptr. 602].)

## DISPOSITION

The order imposing sanctions is affirmed.

Chin, P. J., and Merrill, J., concurred.

A petition for a rehearing was denied November 14, 1995, and appellants' petition for review by the Supreme Court was denied January 18, 1996.