[No. C062657. Third Dist. June 29, 2011.]

BETH VAN SICKLE, Plaintiff and Respondent, v.
GREGORY F. GILBERT, Defendant and Appellant;
VICKILYN GILBERT, Movant and Appellant.

1498

**COUNSEL**

Gregory F. Gilbert for Defendant and Appellant and for Movant and Appellant.

Law Offices of Thomas J. Feeley and Thomas J. Feeley for Plaintiff and Respondent.

**OPINION**

**ROBIE, J.**—In this action, plaintiff Beth Van Sickle filed a complaint against her former attorney, defendant Gregory F. Gilbert, arising out of his alleged mismanagement, years earlier, of certain properties Van Sickle had received in a divorce in which Gilbert had represented her. Van Sickle included in her complaint a cause of action for an accounting, and, as is generally true in accounting cases, she did not include in her complaint a demand for a specific amount of money from Gilbert in connection with that cause of action. (See *Ely v. Gray* (1990) 224 Cal.App.3d 1257, 1261–1262 [274 Cal.Rptr. 536].) She also included in her complaint a cause of action for breach of fiduciary duty, in which she likewise failed to include a prayer for a specific amount of damages. There is also no evidence Van Sickle ever served Gilbert with a statement identifying the amount she sought to recover from him in this action, whether as damages or otherwise.

When Gilbert failed to comply with an order compelling him to answer Van Sickle's special interrogatories and respond to her demands for production of documents, the trial court granted Van Sickle's request for a terminating sanction and ordered Gilbert's answer stricken. Van Sickle thereafter took Gilbert's default and obtained a default judgment against him for more than $2 million, half of which consisted of punitive damages.

On Gilbert's appeal, we conclude that while the trial court did not abuse its discretion in imposing a terminating sanction on Gilbert, the default judgment and the default must be set aside because Van Sickle could not take Gilbert's default until she put him on notice of the amount of money she sought in the action, which she failed to do. Accordingly, we will reverse the judgment against Gilbert and direct the trial court to set aside his default and allow Van Sickle to amend her complaint to allege specifically the amount of money she is seeking to recover from him.

On the separate appeal of Vickilyn Gilbert from the trial court's refusal to allow her to intervene in the action, we conclude that appeal is untimely and will therefore dismiss it.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

### I

### *The Underlying Facts*[2]

In 1965, Van Sickle filed for divorce from her husband of 10 years, Jack Van Sickle.[3] In July 1968, Van Sickle retained Anthony Scalora to represent her in a divorce proceeding on a contingency basis because Van Sickle told Scalora she had no money but felt she was entitled to some of Jack's extensive property at Lake Tahoe. Under the terms of the contingency agreement, Van Sickle agreed to pay Scalora 10 percent of the first $100,000 recovered and 30 percent of any amount recovered in excess of $100,000, plus costs not to exceed $10,000.

In 1981, Van Sickle entered into a new contingency fee agreement with Scalora and Gilbert, who had apparently been assisting Scalora with Van Sickle's representation. The new agreement recited that the property under dispute was subject to long-term leases and that attorney fees would be paid out of an assignment of proceeds from those leases. Upon termination of the leases or distribution of the property, the entire amount of attorney fees would

---

[1] To avoid confusion, we will refer to Vickilyn Gilbert by her first name. By Gilbert, we mean defendant Gregory Gilbert.

[2] Some of the following facts are taken from our nonpublished opinion in *Van Sickle v. Gilbert* (Mar. 4, 1997, C023745), which Van Sickle attached to her complaint in this action and of which Gilbert has requested that we take judicial notice (a request that we grant). The remaining facts are drawn from the allegations of the complaint in this action.

We deny Gilbert's request that we take judicial notice of "the age of Mr. Melvin Beverly [(the discovery referee in the action)] and his subsequent death" because neither of these facts is relevant to our decision.

[3] To avoid confusion with plaintiff, we will refer to Jack Van Sickle by his first name.

be paid. At some later point, apparently, it was determined and/or agreed that Scalora and Gilbert would divide their 30 percent interest under the fee agreement, with 12 percent going to Scalora and 18 percent going to Gilbert.

In 1984, Van Sickle, Scalora, and Gilbert agreed to modify the fee agreement because of a settlement proposal under which Van Sickle would receive certain properties that were subject to leases ranging from 20 to 50 years. If Van Sickle were required to pay the attorney fees in a lump sum, it would destroy the value of the properties; accordingly, Van Sickle and her attorneys agreed to payment of the 30 percent fee in installment payments over the life of the leases, with a lump sum due only if the properties were sold.

According to the allegations of the complaint in this action, "[i]n 1985, . . . Gilbert marshaled, gathered, and took possession of the properties that were transferred [to Van Sickle] pursuant to the final judgment of the divorce," and "[b]etween 1985 and 1992, . . . Gilbert managed the properties, distributed certain sums of money as and for attorney fees, expended certain sums of money and delivered certain sums of money to [Van Sickle]." According to Van Sickle, Gilbert also used money from the properties to pay himself and Scalora for Gilbert's defense of a tax audit, as well as paying himself attorney fees for handling tenant litigation. Also according to Van Sickle, "Gilbert so mismanaged the properties, that the taxes were not paid, delinquencies were filed, and [Van Sickle] ha[d] no way of determining the amounts of money previously paid under the contingency fee contract."

In 1992 Scalora assisted Van Sickle in obtaining management of the properties from Gilbert. That same year, Scalora died. He and his wife had previously assigned all interest under the fee agreement to a family trust.[4]

In 1994, Van Sickle sued Gilbert and the trust to rescind the fee agreement, alleging it was void as against public policy and obtained by undue influence. The trial court granted summary judgment in favor of Gilbert and the trust on the merits. On Van Sickle's appeal, this court affirmed the judgment on the ground her action was barred by the statute of limitations.

According to Van Sickle, in April 2003—11 years after Gilbert's management of the properties had ended—she requested "a complete accounting . . . from . . . Gilbert for the time he managed the properties as well as [for] the monies received under the contingency fee agreement and additional attorney fees paid to him above the contingency fee agreement." Gilbert did not

---

[4] Scalora's widow, Marian, is the trustee of the trust. For convenience, we will refer to the trust as the successor of Scalora's interest.

respond to that request or to several others over the following year and did not provide the requested accounting.

## II

### *The Pleadings*

In June 2004, after her requests for an accounting went unheeded, Van Sickle filed a complaint for accounting, declaratory relief, constructive trust, and breach of fiduciary duty against Gilbert and the trust. Van Sickle alleged that without an accounting from Gilbert for the period he managed the properties she could not properly distribute money she was holding in trust from the condemnation of certain of the properties. Van Sickle also sought declaratory relief on whether Gilbert and the trust were entitled to 30 percent of the value of the properties she received in 1985, minus whatever payments they had already received (as she contended), or whether they were entitled to 30 percent of the value of the properties without such an offset (as they contended). In her constructive trust claim, Van Sickle alleged that Gilbert had wrongfully withheld "certain assets of the divorce settlement," consisting of stock in a certain corporation. Finally, Van Sickle alleged that Gilbert had "failed to present an accounting, . . . failed to turn over all of the assets, and . . . failed to protect [her] from adverse tax consequences, all to the detriment of [Van Sickle] for damages in an amount unascertained at this time, to be presented at trial, and in excess of the jurisdictional amount of this Court." Van Sickle also alleged that "Gilbert's actions were intentional, wrongful and deliberate and should allow the award of punitive or exemplary damages." Nowhere in the complaint did Van Sickle demand a particular amount of damages, either compensatory or punitive.

Gilbert was served with the complaint on July 13, 2004, but he did not timely file an answer, so Van Sickle took his default on September 15, 2004. In November 2004, Van Sickle agreed to set aside Gilbert's default. A stipulation and order setting aside the default, filed on January 27, 2005, provided that Gilbert would have five court days to file an answer, but it was not until March 22, 2005, that Gilbert finally answered the complaint with a general denial and 24 affirmative defenses.

### III

### *Discovery History*

### A

### *Appointment of the Accountant*

In April 2005, the court (Judge Suzanne Kingsbury) continued a previously scheduled settlement conference and trial on Van Sickle's motion because there was insufficient time to complete an accounting beforehand; at the same time the court ordered an accounting to be completed by an agreed-upon accountant. The parties were unable to agree on an accountant, so in August 2005 the court (visiting Judge Arjuna Saraydarian) appointed Kerry David, a certified public accountant, to perform the accounting.[5]

### B

### *Van Sickle's Discovery Requests*

Meanwhile, on June 30, 2005, Van Sickle served Gilbert by mail with 23 requests for admissions, 128 special interrogatories, and 42 demands for production of documents.[6] After three prefatory questions asking for Gilbert's name, address, and the identity of anyone who helped him in answering the interrogatories, the next 72 special interrogatories asked Gilbert to state the facts on which he based each of his affirmative defenses and to identify all persons and all documents that would support those facts. The following 31 interrogatories asked Gilbert to list the properties he marshaled for Van Sickle, to list all payments he received and all expenses he paid in connection with certain specific properties and assets, and to identify all persons and all documents that would support his answers to the previous interrogatories. The remaining 22 interrogatories sought various other information.

Forty-one of the 42 demands for production of documents that accompanied the special interrogatories asked Gilbert to produce all documents he had identified in his responses to the various special interrogatories that had asked him to identify documents. The final demand for production asked him to produce "all other DOCUMENTS related to the assets and properties of the Beth Van Sickle divorce settlement."

---

[5] We refer to David as the accountant.

[6] Although the parties refer to "requests" for production, we use the term "demands" because that is the term the discovery statutes use. (See *Pelton-Shepherd Industries, Inc. v. Delta Packaging Products, Inc.* (2008) 165 Cal.App.4th 1568, 1573, fn. 6 [82 Cal.Rptr.3d 64].)

Gilbert failed to timely serve *any responses* to Van Sickle's discovery requests.

## C

### The Accountant's Requests for Documents

On November 10, 2005, the accountant wrote to Gilbert and asked him to provide various documents, primarily for the period when Gilbert managed Van Sickle's properties.[7] On December 1 and again on December 22, 2005, the accountant advised the court that he had not received the requested material from Gilbert. Because the lack of documents from Gilbert impacted the accountant's ability to prepare his report for·the court, the court (Judge Kingsbury) issued an ex parte minute order on December 22, 2005, requiring Gilbert to provide the requested material to the accountant by January 4, 2006, in advance of a hearing to review the accountant's work that was already set for January 6, 2006. The court also set a hearing on January 6 for an order to show cause (OSC) for sanctions, in the event Gilbert failed to provide the documents as ordered.

## D

### Van Sickle's Motion to Compel

Meanwhile, on December 14, 2005, Van Sickle filed a discovery motion against Gilbert seeking to have the requests for admissions deemed admitted (Code Civ. Proc.,[8] § 2033.280, subd. (b)) and an order compelling Gilbert to respond to the special interrogatories and the demands for production of documents (§§ 2030.290, subd. (b), 2031.300, subd. (b)). As part of her motion, Van Sickle sought $1,056.30 in monetary sanctions from Gilbert. The

---

[7] Specifically, the accountant asked Gilbert for the following documents:

"1. Copies of statements of account or other summaries of transactions prepared in your management of properties for Beth Van Sickle for the period 1985–1992.

"2. Copies of all bank statements for the period 1985–1992 as well as the cleared checks and bank deposit slips for the same period for the bank accounts in which income was deposited and disbursements made for the benefit of the managed properties of Beth Van Sickle.

"3. Copies of all invoices for services rendered by Gregory F. Gilbert and Anthony J. Scal[o]ra for the period 1985 to present for the benefit of Beth Van Sickle or the management of her properties.

"4. Copies of all invoices for the reimbursement of expenses to Anthony J. Scal[o]ra and you[r]self pertaining [to] the management of all properties for the period 1985–1992.

"5. Copies of all tenant lease agreements, property tax statements, and all invoices received pertaining to the managed properties during the period 1985–1992."

[8] All further section references are to the Code of Civil Procedure.

hearing on that motion was set for January 13, 2006. Copies of the discovery requests were attached to the motion.

## E

### *Gilbert's Response to the Accountant's Requests*

Gilbert appeared at the review/OSC hearing on January 6 and apparently told the court that he· did not believe he had any files with documents responsive to the accountant's requests. The court ordered Gilbert to file a declaration under penalty of perjury by January 27 regarding the documents and continued to February 3 both the review hearing on the accountant's work and the hearing regarding sanctions for Gilbert's failure to provide the requested documents to the accountant.

## F ·

### *The Order Compelling Discovery*

Meanwhile, Gilbert failed to file an opposition to Van Sickle's discovery motion. On January 13, 2006, the trial court (retired Judge Thomas Smith) issued a tentative ruling granting the motion, ordering that all but two of the requests for admission were deemed admitted and that Gilbert was to serve responses to the special interrogatories and the demands for production by January 27. The court also imposed a monetary sanction of $786.30 on Gilbert. Neither side requested a hearing, so the tentative ruling became the order of the court. Additionally, the court ordered Gilbert to pay the sanctions to the court by March 10, and the court set a hearing for that date regarding Gilbert's payment of those sanctions.

## G

### *Gilbert's Declarations*

On January 30, 2006, Gilbert filed three declarations "in support of" an unidentified motion that he did not file. The gist of the declarations was that due to problems with receiving mail at his office, he had never received Van Sickle's discovery requests, although his office did receive the discovery motion (albeit when Gilbert was out of the country). In addition, the employee who processed Gilbert's mail claimed he had mistakenly calendared the hearing on the discovery motion for January 27 instead of January 13. In his declaration, which was one of the three he filed, Gilbert stated that he was "seeking a stipulation by counsel to allow the filing of the Discovery

without prejudice due to the two factors of not receiving the Discovery Requests and the error in scheduling."

In addition to addressing his failure to respond to Van Sickle's discovery, in his declaration Gilbert addressed his search for documents responsive to the accountant's requests. Specifically, Gilbert provided pictures of "all of the filing shelves, drawers, filing cabinets, and filing systems where [his] property is kept." He asserted that the files he had found in his search were "too voluminous to produce by copy," so he requested a joint meeting at which the accountant could review them.

## H

### *The Appointment of the Discovery Referee*

On February 2, 2006, the court (Judge Kingsbury again) issued a tentative ruling for the February 3, 2006, hearing regarding the accountant's document requests, ordering Gilbert's personal appearance as well as production of the documents he had identified in his declaration. Gilbert did not appear at the hearing nor produce any documents. The trial court appointed retired Commissioner Melvin Beverly as discovery referee and initially proposed to continue the hearing to February 17, 2006, but Van Sickle's attorney proposed that the court continue it to March 10, 2006, instead because the hearing regarding Gilbert's payment of the monetary sanctions for failing to respond to Van Sickle's discovery requests was already set for that date. Van Sickle's attorney further proposed that if Gilbert did not "show records or file a motion" by March 10, the court should "entertain a motion to set aside his answer."

In response to that proposal, the court stated that "since Mr. Gilbert failed to come to court with his files as directed, . . . if he has not complied fully with the Court's order of today by that March 10 date, it would be the intention of the Court to strike his answer." Thereafter, on February 6, 2006, the court signed and filed a formal order after hearing, which ordered Gilbert to "present all documents to Commissioner Melvin Beverly on or before March 10, 2006" and provided that "[i]f Mr. Gilbert fails to appear and produce the documents so ordered, the Court will strike Mr. Gilbert's Answer, and allow a default to enter."

I

*Gilbert's Production of Documents for the Accountant*

On March 10, 2006, Gilbert appeared and brought with him eight boxes of documents. The court[9] stated it would keep the documents and notify the referee and the accountant of them. In response to the assertion of Van Sickle's attorney that he "had an order from the Court ordering the production of the documents on [Van Sickle's] personal request for production," the court also stated that it would "look back at [Van Sickle's] motions" to determine if Van Sickle's attorney should be allowed access to the documents.

Later that day, the court issued a minute order directing that the referee would first review the documents, then the accountant. After that, Van Sickle's attorney could ask to review them.

A month and one-half later, on April 26, 2006, the court on its own motion set "a further hearing regarding discovery . . . for May 19, 2006." At that hearing, the court stated that the referee had "gone through some of the boxes," but "there [wa]s a lot of stuff that [he] doesn't have to go through"—apparently suggesting that not all of the documents were relevant to the accountant's requests. Accordingly, arrangements were made for Gilbert to pick up the documents from the referee, and the court ordered Gilbert to go through them and give the accountant all of the financial documents the accountant had requested by June 30, 2006. The court also set a further review hearing regarding discovery for that date. At the end of the May 19 hearing, Van Sickle's attorney noted that his client had "an outstanding discovery order and sanctions against Mr. Gilbert for not supplying documents [or] answers to interrogatories," and he asked if his client was "go[ing] to be precluded from striking [Gilbert's] answer and sanctions for not responding to [the] last discovery order." The court answered that it was not going to preclude Van Sickle's attorney from anything.

At a settlement conference on June 26, 2006, regarding payment of the referee's fees, the parties agreed that Gilbert would deliver the documents for the accountant to the referee by June 29. He was unable to do so, however, so he produced them the following day at the review hearing, and the court stated it would send the box of documents on to the referee.

---

[9] The reporter's transcript indicates it was Judge Kingsbury still, but the minute order and the register of actions indicate it was now Judge Jerald Lasarow. It appears Judge Lasarow took over the case from Judge Kingsbury at this point and stayed with it for the next two years.

On July 11, 2006, the court issued an ex parte minute order directing Gilbert to file within 10 days a declaration under penalty of perjury addressing whether the documents he produced in court on June 30 were "all of the documents in his possession, or under his control, satisfying the requests of Mr. Kerry David in his letter dated November 10, 2005" and if they were not stating where any remaining responsive documents could be found.

On July 17, Gilbert filed a declaration stating that he had provided the referee with all of the documents in his possession or under his control that satisfied the accountant's requests and he was unaware of any additional responsive documents "other than those [he] provided to [Van Sickle]'s counsel in the last lawsuit, and those held by [Scalora]."

J

*Van Sickle's Motion for Terminating Sanctions*

On or about August 29, 2006, Van Sickle submitted to the court a discovery motion for an order compelling responses to special interrogatories and demands for production and/or for terminating and monetary sanctions. The court filed the motion, but issued an ex parte minute order stating that it was "not setting a hearing on the motion on September 28, 2006" because Commissioner Beverly had been appointed discovery referee for all purposes, and counsel needed to contact him for a mutually agreeable hearing date. On September 12, Van Sickle filed a notice of hearing setting a hearing before the referee for September 29. On September 15, Van Sickle filed an amended notice of the hearing; the only difference from the original notice appears to be that the amended notice shows the hearing was not going to be held in Department 4, as the previous notice indicated, but instead would be held on a telephone conference call. (Beyond these notices, none of the moving papers appear in the record on appeal.)

In his seventh "REPORT OF DISCOVERY REFEREE" filed with the court on October 4, 2006, the referee reported that "Gilbert filed no timely response" to Van Sickle's discovery motion and as a result the referee "ruled that [Gilbert] could present no argument and . . . had waived his rights with respect to the motion." The referee found that Gilbert "failed to respond in any manner" to either the special interrogatories or the requests for production of documents "within the time prescribed by law," failed to comply with the court's order to respond to the discovery requests by January 27, and failed to file a response to either of Van Sickle's discovery motions. The referee further found that Gilbert "failed to respond to requests for information by the Court appointed accountant . . . until extreme pressure including a judicial threat to strike his answer was made. Even then his response did not

provide the information sought and only tended to obfuscate the matter." After also finding that Gilbert had not paid the monetary sanctions the court had previously ordered, the referee concluded that Gilbert had misused the discovery process by failing to respond to authorized methods of discovery and by disobeying a court order to provide discovery. The referee further concluded that Gilbert's conduct was "so egregious as to make it apparent that no lesser sanction than the terminating sanction would compel [him] to obey the orders of the Court regarding discovery." The referee recommended that the court impose a monetary sanction of $2,093.75 and strike Gilbert's answer.

On November 3, 2006, the court approved the referee's seventh report, ordering Gilbert to pay the monetary sanctions the referee had recommended and striking Gilbert's answer. Five days later, on Van Sickle's request, the clerk entered Gilbert's default in the action.

## K

### Gilbert's Set-aside Motion

On December 4, 2006, Gilbert moved for relief from the default (among other things). In his motion, Gilbert argued that he had already shown he was "never . . . properly served" with the interrogatories. He contended that if Van Sickle's attorney had met and conferred with him on the matter, Gilbert "would have prepared the response to interrogatories, and this matter would have been easily settled." Gilbert further asserted that as of the telephone conference on September 29, "there w[as] . . . certainly no failure to answer the Interrogatories, since he was never served the Interrogatories due to actions beyond his knowledge or reasonable control," and he asserted that he had "complied with every Court Order."

Gilbert also asserted in his motion that "[n]o default can be issued until a CCP 425.11 statement of damages is served" and "[t]his applies to sanctions for failure to respond to discovery." He did not, however, offer any evidence about whether such a statement had or had not been served.[10]

The hearing on Gilbert's motion for relief from default, originally set for January 2, 2007, was continued by the court to January 19. In a ruling of the

---

[10] In fact, Gilbert's set-aside motion was not accompanied by any admissible evidence. While the moving papers included a section that purported to be Gilbert's declaration, in signing the papers Gilbert declared that "the foregoing is true and correct to the best of my knowledge and belief," but he did *not* make that declaration *under penalty of perjury*, as required by California law. (See § 2015.5.) In any event, the moving papers contained no express assertion as to whether a statement of damages was or was not served.

latter date, the court noted that while Gilbert had filed a 17-page memorandum of points and authorities in support of his motion for relief from default, "he does not indicate that he complied with discovery and does not submit anything to show that he is currently complying with discovery, nor is there any attempt to comply with the discovery that was the subject of the Seventh Report." The court then continued the hearing on the motion to February 16 and noted that it would "expect Mr. Gilbert to have 'clean hands' when he comes to Court on February 16th and to have complied with all outstanding discovery requests and court orders prior to being heard on that date."

At the hearing on February 16, 2007, Gilbert stated that he had "filed the discovery" and "paid the sanctions." The court asserted that the case had "been haunted . . . with lack of discovery," and Gilbert asserted that was "not true." Ultimately, Gilbert claimed he had served the discovery responses two days before the hearing because he "wanted to be absolutely complete." (Van Sickle's attorney later acknowledged that Gilbert had served responses to the requests for admissions and the special interrogatories on Feb. 15, although it appears he may have meant Feb. 16, the date of the hearing.) The court took the matter under submission.

On February 27, 2007, the court, on its own motion, set the matter for a "Meet and Confer Hearing" on March 23. On the morning of that hearing, Van Sickle submitted a brief on Gilbert's responses to her special interrogatories, asserting that numerous of those responses were "evasive and nonresponsive." At the hearing, the court asked Van Sickle's attorney whether he had received answers to the discovery, not whether the answers were sufficient. Counsel responded that he had received answers to the special interrogatories and to the requests for admission (which the court had already deemed admitted), but he had not received any responses to the demands for production.[11] Gilbert asserted that the court had "ruled that [his] response to the request for production was adequate when [he] took back all eight boxes and . . . gave them the new accountings" and "[t]here is no request for production before this Court." Ultimately, the court took the matter under submission again.

Some time thereafter, Gilbert filed a "supplement" to his motion for relief from default (which does not appear in the record on appeal), and the court set a further hearing for April 13. On April 12, Van Sickle filed a response to

---

[11] Van Sickle's attorney also asserted he did not "get a response to the form interrogatories"—an assertion he continued to pursue later on—but whether such interrogatories were ever served (Van Sickle's attorney asserted they were served with the other discovery requests), what is clear from the record is that any such form interrogatories were never part of the subject of Van Sickle's discovery motions. Accordingly, the failure to serve responses to form interrogatories could not have provided the basis for any sanction against Gilbert, let alone a terminating sanction.

Gilbert's "supplement" addressing the demands for production of documents. Van Sickle asserted that Gilbert was continuing to mislead the court because "[t]here were two production issues in this case"—one relating to the accountant's request for documents and the other relating to Van Sickle's demands for production. Van Sickle argued that while Gilbert might have addressed the accountant's request, he had "not provided [Van Sickle] with one single document, nor any verified response identifying documents."

At the April 13 hearing, the court and the parties discussed the matter, and Gilbert eventually asserted that when he gave all of the original documents to the referee, "[t]hat was [his] production on both" the requests from the accountant and the demands for production of documents from Van Sickle. The court asked Van Sickle's attorney to "write a letter to the court again setting forth particularly . . . what documents [he] requested, [and] a copy of the motion," and the court would then "have to decide" whether Gilbert had complied with the discovery order the court issued in January 2006. The court ordered Van Sickle's attorney to submit his letter by May 7, with Gilbert to file any response by May 21, and set a further hearing for June 1. That hearing was later continued to July 20.

On May 3, 2007, Van Sickle's attorney filed a letter brief and declaration explaining that "in spite of court orders and ample opportunity, Mr. Gilbert has not served verified responses to . . . [the] Request For Production of Documents." He further noted that even if Gilbert did not receive the original discovery requests, "he did receive the original notice of motion to compel which had the original discovery attached." Van Sickle's attorney also asserted he had provided Gilbert with additional copies of the discovery requests in person at the hearing on March 10, 2006.

On May 24, 2007, Gilbert filed a "supplemental reply" in which he asserted that "[a]ll Requests for Production were provided, without objection, and the verification of completeness was filed as requested on time, and without objection." He also asserted, however, that until he was served with Van Sickle's hearing brief at the March 23 hearing, he "was never served with a copy of the request for production of documents (which is separate and apart from the one for financial documents which was properly satisfied in court)." He also asserted that he had "now responded to every one of the interrogatories and discovery requests for production as required by law."

On May 29, 2007, Van Sickle's attorney filed a response to Gilbert's supplemental reply. He asserted that on May 24, 2007, "persons unknown delivered four file boxes of documents" to his office, but they were "not accompanied by any companion papers whatsoever, no index, no written response, no verification, nor proof of service."

On June 1, 2007, Gilbert filed a supplemental declaration. He admitted serving the four boxes of documents on Van Sickle's attorney and claimed they were "accompanied by a supplemental declaration by [him] stat[ing] that the four boxes were in full compliance with [Van Sickle's] request for production."

At the hearing on July 20, the court stated that it had read Gilbert's responses to the special interrogatories and found them insufficient, because "basically [his] answers [we]re go look at this case that was in this court and look through the file, however thick the file may be." The court indicated it was going to deny Gilbert relief from default, and on August 1, 2007, entered a formal order doing so.

## L

### The First Default Judgment and Gilbert's First Appeal

On October 9, 2007, Van Sickle filed a request for a default judgment against Gilbert that did not request any money. On October 19, 2007, the court entered a document entitled "DEFAULT JUDGMENT AGAINST GREGORY F. GILBERT," in which the court ordered that "[j]udgment shall be entered forthwith for . . . VAN SICKLE, and against . . . GILBERT on all causes of action in the Complaint. . . . VAN SICKLE, shall schedule a prove up hearing." Notice of entry of that judgment was served by mail on November 19, 2007. On January 16, 2008, Gilbert filed a notice of appeal from the judgment.

Following the filing of the notice of appeal, the litigation continued between Van Sickle and the trust. In July 2008, this court dismissed Gilbert's appeal for his failure to designate the record on appeal.

## M

### The Motion to Intervene

In October 2008, Gilbert's former wife, Vickilyn, filed a motion to intervene in the action.[12] Gilbert served as her attorney. The hearing on that motion was continued to January 2009 to allow for additional briefing. Meanwhile, in December 2008 Van Sickle dismissed her complaint against the trust pursuant to a settlement.

---

[12] The basis for the motion to intervene is irrelevant to our disposition of this appeal, and therefore we do not discuss it.

In February 2009, the court (now Judge Steven Bailey) denied Vickilyn's motion to intervene.

## N

### *The Second Default Judgment*

In April 2009, Van Sickle set a default prove-up hearing and filed a second request for a default judgment against Gilbert, this time requesting a money judgment of either $1,330,230.71 or $984,812.22. The first figure was based on evidence that Gilbert's 18 percent interest in the properties Van Sickle received in her divorce was worth $971,280, but he had received at least $1,198,848.45, for an overpayment of $227,565.45. Van Sickle proposed that the court award her the amount of the overpayment as compensatory damages, plus $1,102,665.26 in punitive damages.

The second figure was based on evidence that Gilbert's mismanagement of the properties and refusal to account had caused Van Sickle $1,102,665.26 in compensatory damages. Van Sickle proposed that the court award her that amount, plus an equivalent amount of punitive damages, minus $1,220,518.30 that she was already holding in trust for Gilbert.

The prove-up hearing was held on April 21, 2009. At the hearing, the court (Judge Steven Bailey) awarded Van Sickle all of the compensatory damages she requested under the second scenario set forth above, with the exception of $12,564, for a total of $1,090,101.26 in compensatory damages. The court also awarded Van Sickle an equivalent amount of punitive damages, for a total of $2,180,202.52 in damages. The court entered the money judgment on April 27, 2009.[13]

## O

### *Gilbert's New Trial Motion and Second Appeal*

In June 2009, Gilbert filed a new trial motion. The trial court (Judge Lasarow) denied that motion on July 31, 2009, on the ground that Gilbert had no standing to make it.

On August 10, 2009, Gilbert and Vickilyn filed a notice of appeal "from the Final Judgment in this matter and all Orders of the Court which are separately appealable, including . . . [the] Denial of Complaint in Intervention."

---

[13] Van Sickle apparently never sought a judgment on her cause of action for declaratory relief or her cause of action for constructive trust.

## DISCUSSION

### I

### *Vickilyn's Appeal*

On appeal, Vickilyn challenges the trial court's denial of her motion to intervene in the action. Van Sickle contends Vickilyn's appeal is untimely. We agree with Van Sickle.

■ "An order denying a motion for leave to intervene is directly appealable because it finally and adversely determines the moving party's right to proceed in the action." (*Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540, 547 [30 Cal.Rptr.3d 303].) As applicable here, "a notice of appeal must be filed on or before . . . [¶] (1) 60 days after the superior court clerk serves the party filing the notice of appeal with . . . a file-stamped copy of the [order], showing the date [the order] was served." (Cal. Rules of Court, rule 8.104(a)(1); see *id.*, rule 8.104(e).)

The trial court clerk mailed a file-stamped copy of the ruling denying the motion to intervene to Gilbert (Vickilyn's attorney) on February 12, 2009. The mailing included a "CLERK'S CERTIFICATE OF MAILING" that showed the date the ruling was mailed. Accordingly, Vickilyn had 60 days from February 12, 2009—or until April 13, 2009—to file her notice of appeal. Obviously, the notice of appeal filed August 10, 2009, came months too late.

■ In the reply brief, Vickilyn contends her appeal was timely because "the notice of appeal can be from either the order or the final judgment" and she appealed from the final judgment. That contention has no merit. "[A]n order denying a request for leave to file a complaint in intervention . . . has long been held appealable on the theory that the denial is a *final determination of the litigation as to the party seeking to intervene*." (*Bowles v. Superior Court* (1955) 44 Cal.2d 574, 582 [283 P.2d 704], italics added; see also *Dollenmayer v. Pryor* (1906) 150 Cal. 1, 3 [87 P. 616].) Once her motion to intervene was denied, Vickilyn had no further cognizable interest in the case, and the *only* order or judgment she could appeal was the order denying her motion to intervene, which she did not appeal in a timely manner.[14] For this reason, we must dismiss Vickilyn's appeal as untimely.

---

[14] Even if Vickilyn could have appealed from the final judgment, it would have done her no good because on appeal from a final judgment we cannot "review any decision or order from which an appeal might have been taken." (§ 906.) Since the order denying the motion to intervene was separately appealable, we could not review that order on appeal from the final judgment and thus cannot consider here whether the trial court erred in its ruling on that motion.

## II

### *Gilbert's Appeal*

#### A

##### *Propriety of the Terminating Sanction*

Gilbert first contends the trial court erred in imposing a terminating sanction on him because the record shows he complied with all discovery orders. We disagree.

■ Failing to respond to an authorized method of discovery is a misuse of the discovery process. (§ 2023.010, subd. (d).) So is disobeying a court order to provide discovery. (*Id.*, subd. (g).) If a party fails to obey an order compelling answers to special interrogatories and/or an order compelling a response to a demand for production of documents, the court may impose a terminating sanction by striking out the pleading of that party and/or rendering a judgment by default against that party. (§§ 2023.030, subd. (d)(1) & (3), 2030.290, subd. (c), 2031.300, subd. (c).)

■ "The trial court should consider both the conduct being sanctioned and its effect on the party seeking discovery and, in choosing a sanction, should ' "attempt[] to tailor the sanction to the harm caused by the withheld discovery." ' [Citation.] The trial court cannot impose sanctions for misuse of the discovery process as a punishment." (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 992 [94 Cal.Rptr.3d 802].) " 'Discovery sanctions "should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery." ' [Citation.] If a lesser sanction fails to curb misuse, a greater sanction is warranted: continuing misuses of the discovery process warrant incrementally harsher sanctions until the sanction is reached that will curb the abuse. 'A decision to order terminating sanctions should not be made lightly. But where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction.' " (*Ibid.*)

"Imposition of sanctions for misuse of discovery lies within the trial court's discretion, and is reviewed only for abuse." (*Doppes v. Bentley Motors, Inc., supra,* 174 Cal.App.4th at p. 991.) "Sanction orders are 'subject to reversal only for arbitrary, capricious or whimsical action.' " (*Liberty Mutual Fire Ins. Co. v. LcL Administrators, Inc.* (2008) 163 Cal.App.4th 1093, 1102 [78 Cal.Rptr.3d 200].)

In arguing the terminating sanction against him was error, Gilbert asserts he "was never guilty of any failure to properly respond to every discovery item." According to him, "there was only one single mailing that he did not receive, and to which he did not immediately reply," and "[u]pon learning of it, he investigated what must have happened and then filed declarations and evidence explaining the fact that he never received the mailing." He contends that, "at most," he was guilty of "delay in the answers to the original set of 'lost mail' documents," and he ultimately "did answer them with all information available." He complains that "a multi-million dollar sanction was given on the first motion to compel, assuming that there was a motion pending." Even continuing into the reply brief, he argues that he "did absolutely nothing wrong, not one single thing."

Gilbert's arguments are simply not supported by the record and his actions are a textbook example of bad lawyering which resulted in an inordinate burden on opposing counsel and the court. As we have explained at length above, in June 2005 Van Sickle served numerous special interrogatories and demands for production of documents on Gilbert, not to mention requests for admissions. Gilbert did not respond, and Van Sickle waited six months before moving to compel responses. Although Gilbert denied receiving the discovery requests, he admitted receiving the motion to compel, to which copies of the discovery requests were attached. On January 6, 2006, Gilbert appeared in court at a hearing on the accountant's request for documents, and he later admitted that he talked to Van Sickle's attorney that day about not receiving the discovery requests, specifically telling counsel that he "would show at the hearing [on the motion to compel] that [h]e had not received the pleadings." Thus, by January 6, Gilbert had the motion to compel, and consequently he had copies of the discovery requests. Despite this fact, for a long, long time Gilbert made absolutely *no* effort to respond to those requests.

On January 13, 2006, after Gilbert failed to file a response to Van Sickle's motion to compel, the trial court granted the motion and ordered Gilbert to answer the special interrogatories and respond to the demands for production. By no later than January 27, Gilbert was aware of the order compelling discovery because on that day he signed a declaration claiming he never received the discovery and in which he told the court he was "seeking a stipulation by counsel to allow the filing of the Discovery without prejudice"—whatever that meant. There is no evidence in the record, however, that thereafter Gilbert *did* seek such a stipulation or make any attempt to comply with the order compelling him to answer the special interrogatories and respond to the demands for production.

At a hearing on May 19, 2006, at which Gilbert was present, Van Sickle's attorney specifically mentioned the "outstanding discovery order and sanctions against Mr. Gilbert for not supplying documents [or] answers to

interrogatories" and mentioned the possibility of seeking further sanctions for not complying with that order. Despite this, there is no evidence Gilbert made any effort to comply with the court's order. Van Sickle allowed three more months to pass before seeking terminating sanctions against Gilbert with a second discovery motion, and still Gilbert made no effort to comply with the court's order. He also failed to respond to the second discovery motion, which the referee noted in recommending that the court grant a terminating sanction, which the court did.

In December 2006, Gilbert moved for relief from the resulting default, but even then he did not respond to Van Sickle's discovery requests. On January 19, 2007, the trial court invited Gilbert to come to the next hearing on his motion on February 16 with " 'clean hands,' " having "complied with all outstanding discovery requests and court orders prior to being heard on that date." From what we can discern, however, Gilbert did not actually provide Van Sickle with answers to her special interrogatories until the very day of the hearing—over a year after they were originally due. Even then, Gilbert *still* did not provide Van Sickle with responses to the demands for production, and so far as we can discern he never has.[15] And as for the interrogatory answers Gilbert finally provided, the trial court found them insufficient.

The foregoing chronology refutes Gilbert's assertion that he "did absolutely nothing wrong." Gilbert misused the discovery process by failing to respond to an authorized method of discovery and by failing to obey a court order to provide discovery. Based on all of Gilbert's actions in the case—including those relating to the accountant's requests for documents—the trial court could have reasonably concluded that no lesser sanction than a terminating sanction would protect Van Sickle's interests in the litigation.

Citing *Andrus v. Estrada* (1995) 39 Cal.App.4th 1030 [46 Cal.Rptr.2d 300], Gilbert argues that "[p]ast conduct that has already been considered by the court cannot be the basis for additional sanctions." Thus, he suggests the trial court was not entitled to consider his failure to cooperate with the accountant's requests for documents in deciding what sanction to impose for his failure to comply with the court order compelling him to answer Van Sickle's special interrogatories and respond to her demands for production of documents.

■ Gilbert is mistaken. In *Andrus,* the court quoted *Sabado v. Moraga* (1987) 189 Cal.App.3d 1 [234 Cal.Rptr. 249] for the proposition that " 'if an attorney continues to engage in dilatory tactics to prevent legitimate discovery a court should be able to consider past conduct in considering the

[15] As the discovery statutes make clear, responding to a demand for production of documents is a completely different thing from producing documents in response to the demand. (Compare §§ 2031.210–2031.260 with § 2031.280.)

attorney's bad faith on the subsequent occasions,' " except that " '[w]here . . . subsequent conduct is not the type that warrants the imposition of sanctions, past conduct which has already been considered by a court cannot justify the imposition of additional sanctions' " because " 'otherwise an attorney might be punished twice for the very same conduct.' " (*Andrus v. Estrada, supra*, 39 Cal.App.4th at p. 1043.) The *Andrus* court further noted, however, that "where prior conduct has not been punished, it can contribute to a later award of sanctions based upon a more extensive course of conduct." (*Ibid.*)

Here, Gilbert was never actually punished for his failure to cooperate in providing the documents the court-appointed accountant requested. Accordingly, the trial court was entitled to consider that conduct, along with his conduct specifically in reference to Van Sickle's discovery requests, in determining whether to impose a terminating sanction on Gilbert for his failure to comply with the court's order relating to Van Sickle's discovery requests.

On the entire record of Gilbert's conduct in this case, we cannot conclude that the trial court's imposition of a terminating sanction constituted arbitrary, capricious, or whimsical action. (*Liberty Mutual Fire Ins. Co. v. LcL Administrators, Inc., supra*, 163 Cal.App.4th at p. 1102.) Accordingly, we find no abuse of discretion in the trial court's striking of Gilbert's answer as a discovery sanction.

### B

*Validity of the Default Judgment and the Default*

#### 1. *The Parties' Arguments*

Repeating an argument he made in his set-aside motion, Gilbert contends, "There can be no default sanction unless a [section] 425.11 statement [of damages] is served." He claims, "it is not disputed that no Statement of Dam[ages] was ever served on" him, and he argues that because it was not "the case must be reversed" and "remanded for [him] to again answer and proceed."

In a later argument, under the heading "The Judgment Was Inconsistent with the Pleadings" (boldface omitted), Gilbert cites section 580 for the proposition that "[t]he relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint, in the statement required by Section 425.11, or in the statement provided for by Section 425.115 . . . ."

(§ 580, subd. (a).) He then asserts that "[f]or all of the reasons set forth herein the relief did not comport with the pleadings."[16]

In response to these arguments, Van Sickle asserts that Gilbert's "[a]llegation of [n]onreceipt of a [s]tatement of [d]amages [l]acks [c]redibility" (boldface omitted), implying that Gilbert is lying about not receiving a statement of damages. Van Sickle also asserts that "[n]o damages need be specified in a complaint or statement of damages served where the action is for an accounting and the defendant is in as good a position to estimate the damages as the plaintiff." Finally, Van Sickle asserts that if Gilbert did not receive a statement of damages, "it was his own refusal to provide his accounting records to . . . Van Sickle that prevented her from rendering an accounting with which to serve [him] in the first place." She asserts that under the doctrine of invited error, waiver, or estoppel, Gilbert should not be allowed to "claim[] prejudice from an error he, in fact, caused."

To address these arguments, we begin with the basic rules of California law limiting the recovery of damages or other money in a default judgment.

## 2. *The Limits on Default Judgments*

■ "It is fundamental to the concept of due process that a defendant be given notice of the existence of a lawsuit and notice of the specific relief which is sought in the complaint served upon him. The logic underlying this principle is simple: a defendant who has been served with a lawsuit has the right, in view of the relief which the complainant is seeking from him, to decide not to appear and defend. However, a defendant is not in a position to make such a decision if he or she has not been given full notice." (*In re Marriage of Lippel* (1990) 51 Cal.3d 1160, 1166 [276 Cal.Rptr. 290, 801 P.2d 1041].)

To effectuate this due process principle, California law provides that where a plaintiff seeks to recover money or damages, the amount sought generally must be stated in the complaint. (§ 425.10, subd. (a)(2).) There are two exceptions to this rule: (1) "where an action is brought to recover actual or punitive damages for personal injury or wrongful death, the amount demanded shall not be stated" (§ 425.10, subd. (b)); and (2) "[n]o claim for exemplary [(i.e., punitive)] damages shall state an amount or amounts" (Civ. Code, § 3295, subd. (e)).

---

[16] It is not clear what "reasons" Gilbert is referring to or where they are "set forth" in his brief, but it may be he intends to reference portions of his statement of the case where he argues that some of the relief Van Sickle sought at the prove-up hearing "amount[ed] to a new cause of action," "an entirely new theory," and "a modification of the [claims]."

■ Sections 425.11 and 425.115 provide methods for satisfying the due process requirement of notice while honoring the bar against pleading a specific amount of damages in the two circumstances described above. In a personal injury or wrongful death action, section 425.11, subdivision (b) provides that "the defendant may at any time request a statement setting forth the nature and amount of damages being sought." As for punitive damages, section 425.115, subdivision (b) provides that the plaintiff can "preserve[] the right to seek punitive damages . . . on a default judgment by serving upon the defendant" a statement identifying the amount of punitive damages the plaintiff intends to seek.

■ Including in the complaint a request for a specific amount of money, or serving a statement of damages when pleading a specific amount is not permitted, is critical because section 580, subdivision (a) provides that "[t]he relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint, in the statement required by Section 425.11, or in the statement provided for by Section 425.115 . . . ." "[A] default judgment greater than the amount specifically demanded is void as beyond the court's jurisdiction." (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 826 [231 Cal.Rptr. 220, 726 P.2d 1295].)

Not only is a default judgment for an amount greater than that specifically demanded void, but when a statement of damages is required but not served, the underlying entry of default is invalid also and is subject to set-aside. (See *Schwab v. Rondel Homes, Inc.* (1991) 53 Cal.3d 428 [280 Cal.Rptr. 83, 808 P.2d 226].) This is so because in a personal injury or wrongful death action, even if the defendant does not request a statement of damages, "the plaintiff shall serve the statement on the defendant before a default may be taken." (§ 425.11, subd. (c).) This requirement applies even when the default is entered as a discovery sanction. (*Morgan v. Southern Cal. Rapid Transit Dist.* (1987) 192 Cal.App.3d 976, 986 [237 Cal.Rptr. 756], disapproved on other grounds in *Schwab*, at p. 434.) Similarly, a statement of punitive damages must be served "before a default may be taken, if the motion for default judgment includes a request for punitive damages." (§ 425.115, subd. (f).)

■ On the other hand, where the amount demanded must be set forth in the complaint and the plaintiff recovers a default judgment for more than that amount, the underlying default is valid even though the default judgment is void. (See *Ostling v. Loring* (1994) 27 Cal.App.4th 1731, 1743 [33 Cal.Rptr.2d 391] ["Vacating the default judgment has no necessary effect on the underlying default and simply returns the defendant to the default status . . . ."].) "Ordinarily when a judgment is vacated on the ground the damages awarded exceeded those pled, the appropriate action is to modify the judgment to the

maximum amount warranted by the complaint." (*Ostling*, at p. 1743.) The trial court, however, has discretion to instead vacate the underlying default and allow the plaintiff to amend the complaint and serve the amended complaint on the defendant. (*Julius Schifaugh IV Consulting Services, Inc. v. Avaris Capital, Inc.* (2008) 164 Cal.App.4th 1393, 1395 [79 Cal.Rptr.3d 910].)

### 3. *Service of a Statement of Damages in an Accounting Action*—Ely v. Gray

■ With these basic rules in mind, we turn back to the parties' arguments. As we have noted, Gilbert first argues that he is entitled to a reversal of the default judgment because he was never served with a statement of damages under section 425.11. Gilbert's reliance on that statute is misplaced, however, because a statement of damages under section 425.11, subdivision (b) is required only "in an action to recover damages for personal injury or wrongful death." This is obviously not a wrongful death action, and Gilbert gives us no reason for characterizing it as a personal injury action either. To the extent Van Sickle sought damages at all, she did so only in her cause of action for breach of fiduciary duty, and Gilbert makes no attempt to explain how such a cause of action can be deemed one for "personal injury."

As it turns out, however, just because Van Sickle's action was not one for personal injury or wrongful death does not mean she was not required to serve Gilbert with a statement of damages before taking his default and obtaining a default judgment against him for more than $2 million in damages. In *Ely v. Gray, supra*, 224 Cal.App.3d 1257, this court concluded that a statement of damages equivalent to that required by section 425.11 may be necessary in an action for an accounting, even though there is no statutory requirement for such a statement.

In *Ely*, the plaintiff obtained "a default judgment for $44,618.44 in an action for the dissolution and accounting of two partnerships he formed with [the] defendant. [The d]efendant was provided with no notice of any amount of money which [the] plaintiff claimed he was owed. [The d]efendant appeal[ed] arguing the legal principle that a default judgment is void when the defendant is given no notice of the amount claimed. [The p]laintiff counter[ed] with the legal principle that the nature of an accounting is such that an amount cannot be specified and specification of a precise amount may be grounds to deny the action." (*Ely v. Gray, supra*, 224 Cal.App.3d at pp. 1259–1260.) As this court observed, "These principles seem at first glance to catch a plaintiff in a bind where he is due no accounting if a sum is specified and cannot receive a default judgment if a sum is not specified." (*Id.* at p. 1262.)

The court resolved this apparent conflict by noting there are two ways out of the dilemma. First, "a plaintiff is not as restricted from including figures in a complaint requesting a partnership accounting as the general principles of accounting would indicate. When a partnership is dissolved, an accounting is the normal course of affairs since any partner has a statutory right to an accounting, absent a contrary agreement, as against the partner winding up the affairs or continuing the business. [Citations.] Such actions often include an estimate of the amount of money due the complaining party although an absolute amount is not specified. [Citations.] [¶] Thus, there is possible a situation . . . where the plaintiff is able to receive a default judgment after requesting an accounting and with adequate notice to the defendant of the amount sought. A plaintiff may be able to include in the complaint or prayer for relief an estimate of the amount due him, be willing to be bound by that amount, and receive a default judgment limited to that amount." (*Ely v. Gray, supra*, 224 Cal.App.3d at p. 1262, fn. omitted.)

Second, drawing an analogy to the statement of damages required by section 425.11, the court found that "a plaintiff who seeks an accounting has the solution of postcomplaint and predefault notice to the defendant of the amount plaintiff will seek to prove due him if the defendant defaults. As with . . . section 425.11, the notice must be given with adequate time for the defendant to respond before a default is entered. We do not find such a requirement burdensome since a plaintiff must be able, as this plaintiff was, to prove some level of defendant's financial liability to receive an award of damages upon default."[17] (*Ely v. Gray, supra*, 224 Cal.App.3d at pp. 1263–1264.) Because the plaintiff in *Ely* neither estimated the amount due him in his complaint nor served the defendant with a statement of the amount he sought to prove due him, this court reversed the default judgment as being in excess of the court's jurisdiction. (*Id.* at p. 1264.)

Here, Van Sickle availed herself of neither of the available remedies identified in *Ely*. She alleged a cause of action for accounting, but she did not include in the complaint or prayer for relief an estimate of the amount due her, nor did she serve Gilbert with a statement of damages[18] before taking his default.

---

[17] Outside of this situation, where a statement of the amount sought to be recovered is permitted in an accounting action because a specific amount cannot be pled in the complaint, the general rule is that a statement of damages cannot be used to satisfy the notice requirements of section 580 in an action other than one for personal injury or wrongful death. (See *Levine v. Smith* (2006) 145 Cal.App.4th 1131, 1136–1137 [52 Cal.Rptr.3d 197].)

[18] Although the statement contemplated by this court in *Ely* is not strictly a statement of "damages," since a cause of action for an accounting is a suit in equity rather than an action at law for damages (*Ely v. Gray, supra*, 224 Cal.App.3d at pp. 1261–1262), for convenience we

### 4. Evidence of Service Here

We must pause at this point to address the latter point in further detail. As we have noted, in moving to set aside the default Gilbert asserted that "[n]o default can be issued until a CCP 425.11 statement of damages is served" and "[t]his applies to sanctions for failure to respond to discovery." He did not, however, offer evidence about whether such a statement had or had not been served. On appeal, he positively asserts that "it is not disputed that no Statement of Dam[ages] was ever served on" him, but he offers no citation to the record to support that assertion.

For Van Sickle's part, she argues that Gilbert's "[a]llegation of [n]onreceipt of a [s]tatement of [d]amages [l]acks [c]redibility" (boldface omitted), implying that Gilbert is lying about not receiving such a statement. Yet Van Sickle points to no evidence that she served a statement of damages on Gilbert and indeed does not affirmatively state that she did, instead resting on the implication that arises from her challenge to the credibility of Gilbert's assertion that she did not. The truth of that implication is questionable at best, however, given that when she originally requested a default judgment against Gilbert in October 2007, after taking his default in November 2006, Van Sickle did not include any specific amount of money sought in her request. Thus, the court entered a "default judgment" that awarded no money but instead required Van Sickle to "schedule a prove up hearing." If Van Sickle had, in fact, served Gilbert with a statement of damages before taking his default in November 2006, then it seems unlikely she would have been unable to identify the amount of money she was seeking from him in her request for a default judgment filed one year later. It also seems unlikely Van Sickle would have waited nearly two and one-half years, until April 2009, to notice the default prove-up hearing if, before she took Gilbert's default in November 2006, she had already served him with a statement of damages identifying the amount of money she was seeking from him.

On the whole, then, we find no substantial basis for concluding that Van Sickle served Gilbert with a statement of damages before she took his default. Since she also did not include in the complaint or prayer for relief an estimate of the amount due her, Van Sickle failed to comply with the requirements of *Ely*.

---

will nonetheless refer to the required statement as a statement for damages, by which we mean a statement of the amount the plaintiff seeks to prove is due him or her as a result of the requested accounting.

### 5. *Service of a Statement of Damages in an Accounting Action*—Cassel v. Sullivan, Roche & Johnson

Without mentioning *Ely*, Van Sickle contends, "No damages need be specified in a complaint or statement of damages served where the action is for an accounting and the defendant is in as good a position to estimate the damages as the plaintiff." In support of this contention, she cites *Cassel v. Sullivan, Roche & Johnson* (1999) 76 Cal.App.4th 1157 [90 Cal.Rptr.2d 899], to which we now turn.

In *Cassel*, the plaintiff withdrew from a law partnership and later filed an action against the partnership for an accounting and for the value of his partnership interest. (*Cassel v. Sullivan, Roche & Johnson, supra*, 76 Cal.App.4th at p. 1159.) He subsequently obtained a default judgment for $305,690, plus attorney fees and interest. (*Id.* at p. 1160.) The partnership successfully moved to set aside the judgment because the plaintiff had failed to serve a statement of damages. (*Ibid.*) In granting the set-aside motion, the trial court relied on this court's decision in *Ely*. (*Cassel*, at p. 1160.)

One of the plaintiff's former partners sought to set aside the default itself, in addition to the default judgment, but the trial court denied that motion. (*Cassel v. Sullivan, Roche & Johnson, supra*, 76 Cal.App.4th at p. 1160.) Thereafter, following the plaintiff's service of statement of damages, the trial court conducted a prove-up hearing in which both sides were permitted to present evidence. (*Ibid.*) After the court entered a second default judgment, the partnership appealed and the plaintiff cross-appealed, arguing that the trial court should not have set aside the original default judgment. (*Ibid.*)

Division Three of the First Appellate District agreed with the plaintiff that the original default judgment should not have been set aside. (*Cassel v. Sullivan, Roche & Johnson, supra*, 76 Cal.App.4th at pp. 1160–1161.) In reaching this decision, the court relied largely on *In re Marriage of Andresen* (1994) 28 Cal.App.4th 873 [34 Cal.Rptr.2d 147], decided after *Ely*. (*Cassel*, at pp. 1162–1163.) In *Andresen*, the Fifth Appellate District held that "due process is satisfied and sufficient notice is given for section 580 purposes in marital dissolution actions by the petitioner's act of checking the boxes and inserting the information called for on the standard form dissolution petition which correspond or relate to the allegations made and the relief sought by the petitioner." (*Andresen*, at p. 879.) Because the wife had checked the box on the petition to request that the parties' property rights be determined and because she attached to the petition a property declaration that listed certain assets and liabilities, the default judgment providing for an in-kind division of the alleged community assets and liabilities and directing the husband to make an equalizing payment was not subject to set-aside. (*Id.* at pp. 877–883.) The

court concluded that "when a petitioner asks the court to determine the rights of the parties as to specified property, the respondent is necessarily on notice that the court will undertake to assess and then divide the alleged community equally between the parties." (*Id.* at p. 880.)

Following its discussion of *Andresen*, the *Cassel* court noted that in the case before it "the remaining partners were in possession of information at least equal to . . . that possessed by Cassel regarding the partnership's financial status from which Cassel's interest would be calculated. Thus, armed with the partnership's financial information and the partnership agreement, the [partnership] could precisely calculate the amount for which it could be liable if it chose to default." (*Cassel v. Sullivan, Roche & Johnson, supra,* 76 Cal.App.4th at p. 1163.) The court determined that on the facts before it, our decision in *Ely* was "not analytically sound," and the court held that "in an action seeking to account for and value a former partner's partnership interest and for payment of that interest, the complaint need only specify the type of relief requested, and not the specific dollar amount sought." (*Id.* at pp. 1163–1164.)

6. *Choosing Between* Ely *and* Cassel

As we have noted, Van Sickle relies on *Cassel* to argue that she did not have to specify the amount of money she was seeking from Gilbert in her complaint or in a statement of damages before obtaining a default judgment against him. We conclude her reliance on *Cassel* is misplaced for two reasons.

 First, *Cassel* is distinguishable from this case. *Cassel*, like *Ely*, involved an action to dissolve a partnership; this case involves a dispute over an attorney's management of his client's property. More importantly, though, in *Cassel* it was undisputed that the partnership was "armed with" the specific information from which it "could precisely calculate the amount for which it could be liable if it chose to default." (*Cassel v. Sullivan, Roche & Johnson, supra,* 76 Cal.App.4th at p. 1163.) Van Sickle points to no evidence that the same situation exists here. She *argues* that "Gilbert was in possession of the information necessary to calculate his potential exposure because he possessed all the accounting records g[e]nerated during his management of the properties from 1985 to 1992," but she points to no *evidence* to support this argument. Given that the period at issue ended 12 years before Van Sickle filed her complaint seeking an accounting from Gilbert, it is not difficult to imagine that many, if not most, of the financial records from Gilbert's management of the properties no longer existed by the time Van Sickle commenced this litigation. Because the facts of this case are very different from the facts of *Cassel*, the holding in *Cassel* does not apply here. (See

*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689] ["[l]anguage used in any opinion is of course to be understood in the light of the facts and the issue then before the court . . ."].)

Second, even if this case were not factually distinguishable from *Cassel*, we would not apply the holding in *Cassel* here because *Cassel* is contrary to this court's decision in *Ely*, to which we continue to adhere. As we explained in *Ely*, "A due process requirement of notice of the degree of financial liability of a defaulting defendant has been consistently applied over time." (*Ely v. Gray, supra*, 224 Cal.App.3d at p. 1261.) In a marital dissolution action, notice sufficient to support a default judgment dividing the community's property (including any equalizing payment necessary to achieve an equal division) may be provided by checking the appropriate boxes on a form petition and listing the property to be divided in the petition; that is the holding of *Andresen*.

It does not follow from that holding, however, that notice sufficient to support a default judgment for the financial value of a partner's interest in a partnership can be provided by simply "specify[ing] the type of relief requested, and not the specific dollar amount sought." (*Cassel v. Sullivan, Roche & Johnson, supra*, 76 Cal.App.4th at p. 1164.) As Division Seven of the Second Appellate District explained in *Finney v. Gomez* (2003) 111 Cal.App.4th 527 [3 Cal.Rptr.3d 604], the rule in *Andresen* "makes sense when applied to form complaints in marital dissolution actions," especially because in such actions "the court *must* value and divide the community estate of the parties equally . . . ." (*Finney*, at p. 542.) Given that an equal division is required by law, the due process requirement of notice is satisfied if the spouse seeking dissolution of the marriage identifies the community assets to be divided in his or her petition and requests that the court divide those assets. In an accounting action seeking the valuation of an interest in a partnership, on the other hand, a simple request that the court value the partnership interest does not provide real notice to the defendant of the degree of financial liability the defendant will face in the event of default. The fact that the defendant may have access to materials from which it can calculate the extent of its liability is not a substitute for *notice from the plaintiff* of the amount of money the plaintiff is seeking. Accordingly, we reject *Cassel*, adhere to *Ely*, and conclude that where a complaint seeking an accounting does not request a specific amount of money from the defendant, the plaintiff must serve a statement of damages before taking the defendant's default, otherwise the resulting default judgment is invalid, as is the entry of default itself.

### 7. *Invited Error*

Van Sickle argues that under the doctrine of invited error, waiver, or estoppel, Gilbert should not be allowed to "claim[] prejudice from an error he, in fact, caused" because "it was his own refusal to provide his accounting records to . . . Van Sickle that prevented her from rendering an accounting with which to serve [him] in the first place." In effect, Van Sickle contends it was Gilbert's conduct that prevented her from being able to serve a statement of damages on him, and he should not be able to use the failure he caused to his advantage.

We are not persuaded. "Under the doctrine of invited error, where a party, by his conduct, induces the commission of an error, he is estopped from asserting it as grounds for reversal." (*Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 166 [143 Cal.Rptr. 633].) "Thus where a deliberate trial strategy results in an outcome disappointing to the advocate, the lawyer may not use that tactical decision as the basis to claim prejudicial error." (*Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1686 [12 Cal.Rptr.2d 279].)

■ Those principles do not apply here. Even if Gilbert's failure to cooperate with discovery could be fairly characterized as "a deliberate trial strategy," Gilbert's conduct is not an excuse for Van Sickle's failure to allege in her complaint a specific amount of money she sought to recover from Gilbert or to serve a statement of damages identifying that amount before she took Gilbert's default. Even if Gilbert had never appeared in the action, Van Sickle still would have been required to take one of these actions. Moreover, she still would have been required to offer evidence to support her claim for a money judgment. (See *Uva v. Evans* (1978) 83 Cal.App.3d 356, 364 [147 Cal.Rptr. 795] ["damages must be proved in the trial court before the default judgment may be entered"]; see also § 585, subd. (b).) Given that Van Sickle was ultimately able to prove up, to the satisfaction of the trial court, her entitlement to more than $2 million from Gilbert, despite his lack of cooperation in discovery, it is apparent that Van Sickle had the ability to come up with numbers she could have included in an amendment to her complaint or in a statement of damages notwithstanding Gilbert's conduct. Accordingly, Van Sickle cannot complain that Gilbert is at fault for *her* failure to serve him with a statement of damages.

### 8. *The Proper Remedy*

The question that remains is the proper remedy here. Because Van Sickle did not notify Gilbert of the amount of money she was seeking from him—either in the complaint or in a statement of damages—the default

judgment cannot stand because it was in excess of the trial court's jurisdiction to enter it. (*Ely v. Gray, supra,* 224 Cal.App.3d at p. 1264.)

Beyond reversing the default judgment, however, what is the proper resolution of this case? If the case is viewed as predominantly an action for an accounting, then under *Ely* the entry of default ought to be set aside because Van Sickle "was required to give notice to [Gilbert of the amount she sought to recover from him] before the default was entered." (*Ely v. Gray, supra,* 224 Cal.App.3d at p. 1264.) If, on the other hand, the case is viewed as predominantly an action for damages for breach of fiduciary duty—where the amount of damages sought must be alleged in the complaint (§ 425.10, subd. (a)(2))—then the ordinary remedy in such a case is to leave the default in place and "modify the judgment to the maximum amount warranted by the complaint." (*Ostling v. Loring, supra,* 27 Cal.App.4th at p. 1743.)

Here, Van Sickle's prayer for relief did not seek any specific amount of damages, but in the body of her cause of action for breach of fiduciary duty she alleged that Gilbert's actions were "to the detriment of plaintiff for damages . . . in excess of the jurisdictional amount of this Court." In the past, similar allegations have been treated as giving the defendant sufficient notice that the plaintiff claims damages of at least the minimum jurisdictional amount of the court. (See, e.g., *Greenup v. Rodman, supra,* 42 Cal.3d at pp. 829–830.) The basis for that practice disappeared, however, with the unification of the municipal and superior courts because following unification *all* causes come within the original jurisdiction of the superior court (see *Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 763, fn. 2 [98 Cal.Rptr.2d 1, 3 P.3d 286]), and thus there no longer is a minimum jurisdictional amount for the superior court to which a default judgment can be reduced.

In any event, recent case law has recognized that even where it is possible to modify a default judgment to a lesser amount warranted by the complaint, the court has discretion to instead vacate the underlying default and allow the plaintiff to amend the complaint and serve the amended complaint on the defendant. (*Julius Schifaugh IV Consulting Service, Inc. v. Avaris Capital, Inc., supra,* 164 Cal.App.4th at p. 1395.) Such a resolution is particularly appropriate here because (1) there is no amount of which Gilbert received proper notice to which the judgment could be reduced and (2) that is effectively what Gilbert asks us to do when he asserts that "the case must be reversed" and "remanded for [him] to again answer and proceed."

For the foregoing reasons, we conclude the default judgment against Gilbert must be reversed and the entry of his default must be set aside. Van Sickle must then be given leave to amend her complaint to specifically allege

the amount she is seeking to recover from Gilbert, and that amended complaint must be served on Gilbert. (See *Julius Schifaugh IV Consulting Service, Inc. v. Avaris Capital, Inc., supra*, 164 Cal.App.4th at p. 1395 [affirming a trial court order providing the same remedy].)

Assuming Gilbert timely files an answer to Van Sickle's amended complaint, the question arises as to whether Gilbert must be allowed to litigate the action thereafter without any consequences for the conduct that led the trial court to impose the terminating sanction on him in the first place. That question is not before us in this appeal. It is a question to be answered by the trial court in the first instance, in the proper exercise of its broad discretion of discovery matters. However, we note that in *Greenup v. Rodman, supra*, 42 Cal.3d at page 830, the California Supreme Court, faced with similar facts, suggested that a defendant in Gilbert's position should be allowed to litigate the case and only if the defendant "thereafter continue[d] to disobey discovery orders" would the imposition of "a second default judgment as a sanction" be appropriate. Of course, even if reimposition of the terminating sanction is not appropriate, the trial court could substitute some lesser sanction in place of the terminating sanction.

### 9. *Some Advice*

Before moving on to the final issue of costs on appeal, we pause to advise that, while it is not required by law, it would certainly behoove the trial court—when faced with a request to strike a defendant's answer as a terminating sanction—to determine whether the posture of the case is such that the plaintiff will be able to obtain entry of a valid default and, subsequently, a valid default judgment if the requested sanction is imposed. Otherwise, as in this case, significant judicial resources may be wasted because the default judgment the plaintiff obtains as a result of the terminating sanction (and maybe even the default itself) cannot stand, and the defendant may end up being entitled to simply file a new answer.

In some cases, this may require the trial court to inquire about whether the plaintiff has served a statement of damages on the defendant, and in such circumstances it might be appropriate for the court to require the plaintiff to provide evidence of the service of a statement of damages before granting the requested terminating sanction. Of course, the need for such inquiry by the trial court would be obviated if a plaintiff, who seeks such a terminating sanction, takes the reasonable step of providing the court, in conjunction with the motion for the sanction, with evidence that the requirements for obtaining a valid default and default judgment have been satisfied. If every plaintiff seeking to strike the defendant's answer as a terminating sanction were to take this step, then precious time and resources—both human and financial—

would not be wasted by the parties and the courts, as in this case, in litigating and adjudicating a default judgment that simply cannot stand.

## III

### *Costs on Appeal*

Van Sickle contends that despite the reversal of the judgment, we should nonetheless award her costs on appeal because of Gilbert's "extensive abuses, errors and delays before the trial court and this Court," asserting that "[w]here an appellant successfully obtains a reversal but is guilty of delay and abuse before the trial court, an award of costs to respondent is appropriate."

In the interests of justice, we may award or deny costs on appeal as we deem proper. (Cal. Rules of Court, rule 8.278(a)(5).) Under the circumstances of this case, we believe the proper result is to require both sides to bear their own appellate costs, except that Van Sickle should recover any costs she can show were attributable solely to Vickilyn's appeal, because Van Sickle has prevailed unequivocally with respect to that appeal. As for Gilbert's appeal, although Van Sickle prevailed in defending the imposition of the terminating sanction on Gilbert, that victory is hollow because she failed to ensure that her case was in a posture where she could obtain a valid default judgment against Gilbert following the imposition of that sanction, and thus we have to reverse the default judgment and direct the trial court to set aside the entry of Gilbert's default. While this result is certainly favorable to Gilbert, Van Sickle is correct in asserting that but for Gilbert's intransigence and uncooperativeness in the trial court, no default judgment would ever have been entered against him in the first place. Moreover, there is serious reason to question the value of Gilbert's appellate victory, because although he has escaped (at least temporarily) a judgment of more than $2 million, on remand he will face litigating the case with 21 of 23 requests for admissions deemed admitted.[19] Those admissions may seriously impair his ability to escape liability going forward—assuming he is able to avoid imposition of a second terminating sanction for further misuse of the discovery process.

On balance, then, we conclude that the interests of justice justify no award of costs on appeal here, except that Van Sickle should recover any costs attributable solely to Vickilyn's appeal.

---

[19] Gilbert never filed a motion seeking relief from the court order deeming those requests admitted. (See § 2033.280, subd. (a).)

## DISPOSITION

Vickilyn Gilbert's appeal is dismissed as untimely. The default judgment against Gregory Gilbert is reversed and the case is remanded to the trial court with instructions to set aside Gregory Gilbert's default and to allow Van Sickle to: (1) amend her complaint to specifically allege the amount she is seeking to recover; and (2) serve that amended complaint on Gregory Gilbert. Each party shall bear his or her own costs on appeal, except that Van Sickle shall recover any costs attributable solely to Vickilyn Gilbert's appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

Raye, P. J., and Duarte, J., concurred.